THE STATE v. SCHILB, Appellant.

Division Two, December 18, 1900.

1. **Embezzlement: FRAUDULENT INTENT: INSTRUCTION.**    There can be
no conviction of felony in the absence of an intent to commit a crim-
inal act.    Such intent in an embezzlement case may be inferred
from a felonious or fraudulent conversion, but in order to war-
rant a conviction for embezzlement the jury must find a fraudulent
intent on the part of the accused to convert the property to his own
use, and an instruction which fails to so require is erroneous.

2. ————: EVIDENCE: INDICTMENT: VARIANCE.    Under an indictment
charging embezzlement of money, evidence in regard to embezzlement
of a cow and calf, is inadmissible and constitutes reversible error.

State v. Schilb.

3. ———: PRINCIPAL AND AGENT: AUTHORITY: APPROPRIATION. Defendant, as agent, sold a tract of land belonging to his principal, and received twenty-five dollars in part payment therefor, which he failed and refused to pay to the principal upon demand. *Held*, that, notwithstanding the money may have been paid to the agent without the principal's authority, since it was received by the agent as part of the purchase money of the land, it was the money of the principal; and if the agent appropriated it to his own use with a criminal intent, he is guilty of embezzlement,

Appeal from Cooper Circuit Court.—*Hon. T. B. Robinson,* Judge.

REVERSED AND REMANDED.

*W. M. Williams, C. D. Corum* and *J. W. Jamison* for appellant.

(1) The court erred in giving instructions four and five, asked by the State. They wholly omit to require the jury to find any fraudulent or felonious intent on the part of defendant, and are similar to an instruction recently condemned by this court. State v. Cunningham, 55 S. W. 282. The fifth instruction is further objectionable for referring the jury to the indictment for some of the issues in the case. (2) There was certainly evidence tending to show that the notes described in the indictment were made at defendant's request and for his own indemnity, and that he did not hold them as agent for Harris. He so testified himself and the facts corroborate his statement. He was, however, entitled to instructions based upon his own testimony alone. If the notes were taken by the defendant for his own protection, and belonged to him, he certainly could not be guilty of embezzling them. He was entitled to have the question of the ownership of the notes submitted to the jury, and the court

erred in refusing instructions four and five asked by him. Commonwealth v. Foster, 107 Mass. 221. (3) The court further refused instruction four asked by defendant, and in instruction four for the State carried out the theory that the conversion of a cow could be received in support of the charge of embezzling money. In these rulings there was manifest error. The defendant never received $40 in money, and never had it in his possession. A charge of embezzling $40 in money is not sustained by proof of embezzling a cow and calf. State v. Dodson, 72 Mo. 283; State v. Crosswhite, 130 Mo. 358; 7 Ency. of Pl. and Pr., p. 453 and note.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

(1) The word "embezzle" is defined by Webster, and is understood by the public in general, to be fraudulent appropriation to one's own use the property entrusted to one's care. The word "embezzlement" is a fraudulent appropriation of property by the person to whom it has been entrusted. Accepting the foregoing then as the proper and usually accepted meaning of the word "embezzle," it must be considered to have been unnecessary for the court to have used the particular word fraudulent in the instruction, as it was understood to be and was contained in the word "embezzle," as found in the charge to the jury. Should it be found to be necessary that the instruction should require the jury to find a fraudulent intent on the part of the defendant, yet the jury may not be instructed upon that question by the use of the word "fraudulent" alone. If the instructions contain words which mean fraudulent and properly give the jury to understand what shall be found before they can convict, no reversible error has been committed. If the words used in the

instruction properly present all essential questions to the jury, no error will be committed because the words employed are not better chosen. The word embezzle in and of itself implies the wrongful appropriation by defendant of property to his own use. McClain's Crim. Law, sec. 622; State v. Reilly, 4 Mo. App. 392. (2) It is charged that the trial court committed error in permitting, over defendant's objections, proof in support of the second count of the indictment that defendant purchased a cow and a calf from Risher and agreed to credit $40, the purchase price, upon one of the notes. Under the circumstances of this case, no error was committed, in that defendant was on trial under the second count of the indictment for misappropriating the proceeds of the note and not the note itself.

BURGESS, J.—At the January term, 1900, of the circuit court of Cooper county, defendant was convicted of the crime of embezzlement under an indictment theretofore preferred by the grand jury of said county.

There were three counts in the indictment, but the first count was dismissed by the State. In the second count the defendant is charged with the embezzlement of $40 in money, which are alleged to have come into his possession as the agent of one Harrison C. Harris. The third count charges him with the embezzlement of a note for $100, payable to the order of defendant Frederick K. Schilb, and signed by Oliver and Esther C. Risher, which he received and held as agent of said Harris. Defendant was found guilty under both counts, and his punishment fixed at two years' imprisonment in the penitentiary under each count. He appeals.

The facts, briefly stated, are, that sometime prior to the first of May, 1898, the defendant was engaged in the real

.estate business in Cooper county, and one Harrison C. Harris of that county, then being the owner of a forty-acre tract of land in said county, placed it in the hands of defendant for sale, agreeing to pay him $20, if he succeeded in so doing. Thereafter defendant sold the land to one Oliver Risher for the sum of $200, Risher to assume the payment of a mortgage then on the land for $100, to pay twenty-five dollars of the purchase money in cash, $75 in one year, and the remaining $100 in two years. Subsequently Harris and wife executed a deed conveying the land to Risher, and delivered it to the defendant.

According to Harris's evidence, who testified as a witness on the part of the State, defendant was to sell the land, and go security for Risher on the note to be given for the purchase money; that Schilb was to collect the money; that he had the notes, and of course was his agent, and that he made the note and took the deed. Risher was to pay Schilb and Schilb was to pay him. The notes were to be for $175. The balance of the purchase money, that is, $25, the witness stated, were to be paid defendant for his commission, less five dollars which were paid by defendant to him.

There were two sets of notes executed for the unpaid purchase money. One set was executed on the thirty-first day of December, 1896, and made payable to Harrison C. Harris or order. One set was one note for $75, due one year after its date, and the other for $100, due two years after its date. The last set of notes were signed by Oliver Risher, and the defendant Schilb, and were sent to Harris by mail, addressed to him at Boonville. The other set of notes were executed by Risher to defendant and secured by a deed of trust on the land executed by Risher and wife. Harris, it seems, knew nothing about the execution of these notes from Risher to Schilb. Harris also testified that he was to get the notes that Schilb and Risher had signed, the

latter as surety, and that he delivered the deed to Schilb with that understanding.    These notes to Schilb were never delivered to Harris.

About a week after Harris's first note became due, he went to Bunceton to see defendant about collecting it, and defendant told him he had collected nothing upon it.    Sometime during the summer after that, another trip was made by Harris, and defendant still claimed that nothing had been collected.    He then made three or four additional trips, the last one of which was after the second note had become due.    Defendant again said that Risher had not paid him anything.

Risher, in his testimony, said that the notes were made payable to Schilb, and that he did not remember of signing and did not sign the two notes introduced in evidence payable to Harris, as they were not the notes secured by the deed of trust.    He further stated that defendant at the time said Harris wanted a deed of trust on the land to secure the notes, and he, Risher, thought he was executing the notes and the deed of trust to Harris.    He said he knew nothing about the two notes payable to Harris, which were shown in evidence, and did not know that they were out against him. Defendant afterwards collected the $75 note payable to himself, receiving in full payment one cow at the price of $40, and the balance in money.    The second, or $100 note, payable in two years, defendant assigned to a man by the name of E. A. Windsor.    Risher afterwards paid Windsor the full amount due on the note, and the deed of trust was released. Harris received nothing except the $5 which were handed to him by defendant at the time the first payment of $25 was made, after deducting defendant's commission for negotiating the deal.

At the close of the State's evidence defendant asked the

court to direct the jury to find a verdict of not guilty, which the court declined to do, and defendant excepted.

Defendant testified in his own behalf substantially that he signed the notes, payable to Harris, as surety for Risher; that Harris required him to do this, and was unwilling to look to the land or to Risher for the money; that defendant took the deed of trust and the notes described in the indictment, payable to defendant's order, for his own protection; that Harris had nothing to do with the deed of trust and the notes payable to defendant, but that they were taken by defendant as an indemnity against the liability which he had assumed by becoming surety upon the notes to Harris, and that he had made payments to Harris from time to time of all the money that was due him on his notes.

The court in behalf of the State, over the objection of defendant, instructed the jury as follows:

"1.   In arriving at a verdict you must be governed by the law as declared by the court in these instructions, and the evidence as you have received it under the direction of the court.   The indictment is merely the formal charge upon which the defendant is being tried and is not to be considered as furnishing any evidence tending to prove his guilt.   The defendant is presumed to be innocent of the offense charged against him and of every degree or grade thereof, and this presumption entitles him to an acquittal, unless overcome by evidence sufficient to convince you of his guilt beyond a reasonable doubt.   If, upon consideration of all the evidence, you have a reasonable doubt of the defendant's guilt, you must acquit him, but such doubt, to warrant an acquittal, must be a substantial doubt of his guilt, and not a mere possibility of his innocence.

"2.   The jury are instructed that they are the sole judges of the credibility of the witnesses, and of the weight

to be given to their testimony, and in determining the weight to be given to the testimony of any witness, the jury may take into consideration the appearance and manner of the witness on the stand and his or her interest, if any, in the result of the trial, and if they shall believe from the evidence that any witness has willfully testified falsely to any material fact in the case, they are at liberty to disregard the whole of such witness's testimony.

"3. The jury are instructed that the defendant is a competent witness in his own behalf, and his testimony should be weighed by the same rules applied to the testimony of any other witness, and you shall give his testimony such weight as you may believe the same entitled to, but in determining what weight you will give to his testimony you may take into consideration his interest in the result of the trial and the fact that he is the defendant on trial, testifying in his own behalf.

"4. The jury are instructed that if they shall find from the evidence that the defendant, at the county of Cooper, and State of Missouri, within the three years next before the finding of this indictment, being at the time sixteen years of age, was authorized and employed by the prosecuting witness Harris to collect from one Oliver Risher certain money owing by said Risher to said Harris, and that by virtue of such employment or agency the defendant took the promissory note of said Risher and of Esther Risher, his wife, payable to the defendant's own order for the sum of seventy-five dollars, a part of the money so owing by the said Oliver Risher, and that afterwards, and within three years next before the finding of the indictment in this cause, the defendant collected from said Oliver Risher a portion of said note in cash and gave credit on said note for other money he owed said Risher for a cow he purchased and

thereafter sold and transferred said note to E. A. Windsor, and if the jury shall further find from the evidence that the money so owing by said Oliver Risher to said Harris and so collected by the defendant in the manner above stated and received by him came into the possession of the defendant by virtue of his employment as agent of said Harris as aforesaid, and that the defendant then and there embezzled or converted to his own use, or took, made away with, secreted, with intent to embezzle or convert to his own use, such money so collected or received by him to the amount of thirty dollars or more with intent to convert the same to his own use without the assent of the said Harris, then the jury will find the defendant guilty under the second count in the indictment, and assess his punishment at imprisonment in the penitentiary for a term of not less than two nor more than five years.

"5. The jury are instructed that if they shall find from the evidence that the defendant was employed by the prosecuting witness Harris as his agent to collect the proceeds of sale of certain land sold by said Harris to one Oliver Risher, and that by virtue of such employment and agency the defendant was enabled to procure and did procure the execution of the latter's note for the sum of one hundred dollars payable to the order of the defendant, as described in the indictment, for part of the proceeds of said land owing by said Risher to said Harris, and that by virtue of such employment said note came into the possession of the defendant, and that the defendant by some deception practiced by him upon said Risher, and while acting as the agent of said Harris, procured said Risher's signature to another note of like amount payable to the order of said Harris, and afterwards, and without the knowledge or consent of said Risher, signed his own name to the last mentioned note and delivered the

same to the said Harris, then the jury are instructed that the
first above described note was the property of the said Harris,
notwithstanding it was made payable to defendant's order
and that said Harris had no knowledge of it; and if the jury
shall find from the evidence that said one hundred dollar
note described in the third count of the indictment was so
procured by the defendant and came into his possession by
virtue of his employment as agent of said Harris, and was
the property of said Harris and that it came into the defend-
ant's possession within three years next before the indict-
ment in this case, and when the defendant was not under
the age of sixteen years, and that the defendant at the
county of Cooper, and State of Missouri, without the assent
of the said Harris, embezzled and converted to his own use,
took, made away with, and secreted said note described in
said third count of the indictment, with intent to embezzle
and convert the same to his own use, then the jury will find
the defendant guilty under said third count and assess his
punishment at imprisonment in the penitentiary for a term
of not less than two or more than five years.

"6.   The court instructs the jury that they may find the
defendant guilty upon both the second and third counts in
the indictment, or not guilty upon both, or guilty upon one
count and not guilty upon the other."

The defendant asked the following instruction, which
was refused.

"4.   Although the jury may believe from the evidence
that defendant received a cow from witness Risher, and that
they valued the same at forty dollars, and defendant did
agree to credit the value of said cow upon Risher's notes
and then converted said cow to his own use, and failed to
account to Harris for the value or proceeds of said cow, yet
the jury are instructed that this will not constitute embezzle-

ment of the forty dollars fixed as the value of said cow, and will not authorize the jury to find defendant guilty under the second count of the indictment."

The State's fourth and fifth instructions are challenged upon the ground that they omit to require the jury to find any fraudulent intent on the part of defendant in converting either the money or property of Harris to his own use. It is well settled that no one can be convicted of felony in this State in the absence of an intent to do a criminal act (State v. Noland, 111 Mo. 473; State v. Cunningham, 154 Mo. 161), but such intent in case of embezzlement may be inferred from a felonious or fraudulent conversion. In Bishop's New Criminal Law, vol. 2, secs. 372, 373, 379, it is said: "The gist of common-law larceny is the felonious 'taking' of what is another's, with the simultaneous intent in the taker of misappropriating it; but in the statutory embezzlement there is no felonious taking, for the thing comes to the servant by delivery, either from the master or a third person, so that the question now is, by what act, after it is received, does the servant commit the embezzlement? The rule of law appears only indistinctly in the books. Still, we may infer from the authorities, and from the reasons inherent in the question, that if the servant intentionally does with the property under his control what one must intend to do with property taken to commit larceny of it, he embezzles it, while nothing less is sufficient; or, assuming the needful criminal intent to exist, he must and need only do what in our civil jurisprudence is termed 'conversion,' defined to be any dealing with the thing which, impliedly or by its terms, excludes the owner's dominion. To illustrate: if the servant instead of delivering the property to his master or another, as required by his duty, pledges it for his own debt, or runs away with it, or neglects or refuses to account for it, or otherwise

wrongfully diverts its course towards its destination to make it his own, he embezzles it. The felonious or otherwise fraudulent intent is an essential element, yet if a man commits the act of embezzlement the presumption is that he means to embezzle." [Spalding v. People, 172 Ill. 55.]

For these reasons the instructions are erroneous and should not have been given as they were.

It is claimed that error was committed in the refusal of the peremptory instruction by which the jury were asked to acquit the defendant. This contention is based upon the grounds that the third count in the indictment charged the embezzlement of the note signed by Risher, payable to the defendant himself or his order, and that the second count had reference to credits upon a note of a similar character, and as they were not taken by defendant, with the knowledge or consent of Harris, or for him by his authority, that they were not Harris's notes.

It seems that defendant of his own volition required these notes and a deed of trust to secure them as an indemnity to him, and that he forwarded to Harris the notes executed by Risher, payable to Harris and upon which defendant was surety, and that they were accepted by Harris, knowing that they were executed to secure the balance of the purchase money for the land. Harris testified that defendant had no authority to take the notes described in the indictment, and that he never knew that they had been so taken until long after they were due, and he called upon Risher for their payment. He never at any time, it seems, ratified the act of defendant in taking the notes to himself. Defendant could not therefore be guilty of embezzling these notes. But he was the agent of Harris in selling and receiving the purchase money for the land, and the evidence showed that he received from Risher $25 of this money, but that he denied

ever having done so, and failed and refused to pay it to him when demanded by Harris. It makes no difference that this money may have been paid by Risher upon one of the notes executed by him to defendant without authority from Harris, nor that Harris accepted the notes of Risher and Schilb for the purchase money for the land; it was part of the purchase money also and was received by him as such, and as the agent of Harris, it was therefore Harris's money, and if he appropriated it to his own use with a criminal intent, he was guilty of embezzlement. The instruction was properly refused.

It is also claimed that error was committed in permitting the State, over defendant's objection, to adduce evidence in support of the second count of the indictment by showing that he purchased a cow and calf from Risher, and agreed to credit $40, the purchase money upon one of the notes. This evidence was clearly inadmissible. The charge was for embezzling money, and could not be sustained by proof of embezzlement of a cow and calf. [State v. Crosswhite, 130 Mo. 358; State v. Dodson, 72 Mo. 283.] It follows that the State's fourth instruction was erroneous for this additional reason, and that the fourth instruction asked by defendant should have been given.

There are other questions raised by counsel for defendant in their brief, upon which we deem it unnecessary to pass, for the reason that from what has been said the judgment must be reversed upon other grounds, and upon another trial the same matters complained of may not again occur.

The judgment is reversed and the cause remanded. *Gantt, P. J.,* and *Sherwood, J.,* concur.