FARMERS STATE BANK OF SOUTH GREENFIELD, MISSOURI, Respondent, v. THE TITLE, GUARANTY & TRUST COMPANY OF SCRANTON, PENNSYLVANIA, Appellant.

Kansas City Court of Appeals, November 16, 1908.

1. PRINCIPAL AND SURETY: Surety's Contract: Construction. A bond of a surety undertook to indemnify the principal's employer for such pecuniary loss as may be sustained "by reason of the fraud or dishonesty of the employee, etc., amounting to embezzlement or larceny," Held, the words "amounting to embezzlement or larceny" qualify both "fraud and dishonesty."

2. ———: ———: ———: Evidence. Held, certain transactions set out in the evidence fall short of showing that the employee's acts constitute embezzlement, since there was no intent shown to convert the funds of the bank to his own use or that of his firm.

Appeal from Dade Circuit Court.—*Hon. J. B. Johnson,* Judge.

REVERSED.

*Thos. H. Sprinkle* and *S. A. Payne* for appellant.

(1) Before there could be any liability under the bond it was necessary for the employer to introduce

133 App—45

such proof as would convict the employee of the crime of embezzlement or larceny. Embezzlement and larceny are both terms of the criminal law and in no respect are they terms of contract law; their meaning therefore, is to be found in the criminal code. Reed v. Fidelity & Casualty Co., 189 Pa. St. 596; Guarantee Co. v. Bank, 100 Fed. 559; Mfg. Co. v. U. S. F. & G. Co., 60 S. C. 128; N. K. Fairbank Co. v. Bonding & Trust Co., 97 Mo. App. 205; Coal Co. v. Fidelity & Dep. Co., 94 Fed. 732; Boone on Law of Banking, sec. 132.

*Edw. J. White* and *Edgar P. Mann* for respondent.

(1) Wrongful appropriation of the funds of his employer, the bank, by the cashier in the manner shown by the evidence in this case, amounted to embezzlement. The funds were in his custody. They were taken and appropriated to his own use by the employee without the knowledge or consent of the bank. R. S. 1899, sec. 1912; State ex rel. v. Merkle, 189 Mo. 315; State v. Gregory, 170 Mo. 606; State v. Lentz, 184 Mo. 241; State v. Crosswhite, 130 Mo. 358. (2) It was not necessary in order to fix the liability of appellant upon the bond that respondent should produce in support of its claim thereunder proof such as would convict the cashier of the crime of larceny or embezzlement as defined by the laws of Missouri. Such a narrow construction of the provisions of the contract is not required by law, and was never contemplated by the parties to it. While larceny is a common law crime, yet in this State it is to a great extent statutory. Embezzlement is purely a statutory crime, but the terms larceny and embezzlement in the bond or policy sued on are used as generic terms to indicate the dishonest and fraudulent breach of any duty or obligation on the part of an employee to pay over to his employer or account to him for any money, the title to which is in the employer, that may in any manner come into the possession of the employee. Ice

Co. v. Bonding & Trust Co., 75 S. W. 197. (3) As the policy sued on provides for a liability in case of a pecuniary loss resulting from fraud or dishonest conduct amounting to embezzlement or larceny, it was not essential to show larceny or embezzlement to recover in this case. Trust Co. v. Lee, 68 N. E. 485; Fairbanks Co. v. Bonding Co., 97 Mo. App. 205. (4) Embezzlement or larceny may be committed by overdraft. Guaranty Co. v. Trust Co., 80 Fed. 785.

BROADDUS, P. J.—The plaintiff is an incorporated bank under the laws of this State, located in Greenfield, Dade county. On the 27th day of July, 1905, one H. C. Woolf was elected its cashier and entered upon the discharge of his duties as such on the 12th day of August following. Prior thereto, he applied to the defendant to make his bond to the plaintiff in the sum of $10,000. The application was in writing and signed by Woolf and E. H. Daughtry, a director of the bank. The defendant executed the bond applied for in consideration of a premium of thirty dollars paid by the bank and the same was delivered to its president, whereupon Woolf at once assumed the duties of cashier.

The principal condition of the bond reads as follows: "Now, therefore, This Bond Witnesseth, That for the consideration of the premises, the company shall during the term above mentioned, or any subsequent or renewal of such term, and subject to the conditions and provisions herein contained, at the expiration of three months next, after proof satisfactory to the company, as hereinafter mentioned, make good and reimburse to the said employer, such pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of the said employee in connection with the duties of his office or position, amounting to embezzlement or larceny. . . ."

Prior to the time that Woolf became cashier, one

Ed I. Myers was engaged in the produce business. He started with a capital of $250. Without the knowledge of the bank, Woolf became a partner of Myers, he having put into the concern the sum of $500, which made him two-thirds the owner of the business. The business was conducted under the name of Myers, Woolf being a silent partner. When the bank opened on the 12th day of August, Myers began with two accounts, one in the name of "Ed I. Myers, private," under which he carried his personal account, and the other in the name of "Ed I. Myers," under which was carried this partnership account of Myers and Woolf. These accounts were kept by Woolf as cashier.

It was shown that Woolf counseled and advised Myers in relation to these partnership affairs. On October 9, 1905, Myers made a draft for $1,500 on B. W. Redfern & Co., St. Louis, which was deposited to his credit and upon which he was allowed to check before any returns were received from the draft. On October 17th, Myers drew another draft on the St. Louis concern for $1,200, which was also deposited to his credit and upon which he was allowed to check before any returns from the same had been received. Both these drafts were endorsed, "No protest." The second draft was accepted by the drawee on October 19, 1905. Both were returned unpaid. The first was returned to and received by the bank on October 20, 1905, and the second on October 28, 1905. On the return of the first draft for $1,500, Woolf, upon the assurance of Myers that there was some mistake about the matter, allowed Myers on October 26th to draw and deposit another draft on the same concern for $1,500 and canceled the first draft, crediting the same by the second one for that amount. On October 28th, Woolf allowed Myers to draw another draft for $1,200 to take the place of the former one for an equal amount, marking the first paid and crediting the same by the second, and allowed Myers to check upon the same. These last two drafts

were also returned unpaid. On November 6, 1905, these transactions left Myers' account overdrawn to the extent of $2,700. Subsequently, Myers made sundry deposits which reduced the amount overdrawn on his account with the bank to the sum of $1,886.29. This suit on the bond is to recover the balance. The defense is that defendant is not liable by the terms of the bond for the shortage.

It is contended by defendant that, although the evidence may have established the fact that Woolf had been guilty of fraud in the transactions detailed, it did not, in law, constitute embezzlement or larceny. Conceding that Woolf was guilty of fraud, it is to be determined whether that fact of itself rendered defendant liable by the terms of the bond. The language is that the company is to *"make good and reimburse to the employer, such pecuniary loss as may be sustained by the employer by reason of fraud or dishonesty of the said employee in connection with the duties of his position, amounting to embezzlement or larceny . . ."* We are of the opinion that the fraud or dishonesty shown must have amounted to embezzlement or larceny in order to have brought the case within the meaning of the language used. Mere fraud or dishonesty alone, not amounting to crime, will not answer the purpose of the obligation. In Reed v. Fidelity & Casualty Co., 42 Atl. (Pa.) 294, "The bond insured Reed's sons to the extent of $2,000 against any pecuniary loss they might suffer by reason of the fraudulent or dishonest acts of Leiding, amounting to embezzlement or larceny." It was held that the insurance was only against the fraudulent and dishonest acts of the employee amounting to embezzlement or larceny. And the holding is similar in Guaranty Co. v. Bank, 100 Fed. 559.

On the other side, we are referred to certain authorities to which we will call attention. In a case wherein plaintiff contracted with a printing company to print certain wrappers on plates and with paper to be fur-

nished by the plaintiff, an indemnity bond was exacted. It was conditioned that if the principal "shall in any manner or by any means misuse, misappropriate, or misapply said paper or plates, or in any manner dispose of the same, or convert them to their own use, amounting to larceny or embezzlement of paper or plates, then this bond to be in full force." Held, "that the effect of the bond was to raise a liability in two contingencies: first, if the principal should in any manner misappropriate or misapply the paper; and second, if it should in any manner, amounting to larceny or embezzlement, dispose of the same or convert it to its own use." [Fairbank Co. v. Bonding Co., 97 Mo. App. 205.] The distinction is clear and the case cannot be considered as governing the one at bar. In City Trust Co. v. Lee, 68 N. E. 485, the language is, "the dishonesty or any act of fraud, amounting to larceny or embezzlement." Held, "that the company was liable for a conversion by the collector though this did not amount to larceny or embezzlement, or the words amounting to . . . embezzlement did not qualify the word, 'dishonesty.'" While we are not disposed to deny the soundness of the decision, we are of the opinion that it is not on all-fours with the case in hand. The language although similar, the arrangement is different and renders it ambiguous. The court, it seems, most strongly construed it against the defendant because it prepared the document. Here, the language is not indefinite. The words, "amounting to embezzlement or larceny," qualify both "fraud and dishonesty." While we would be disposed to give the plaintiff the benefit of any ambiguity, if any existed, we feel that there is room for but one construction. The language is too plain for quibble as to its meaning.

So considering the interpretation to be put upon the meaning of the language of the instrument, the question remaining is, whether the evidence tended to show that Woolf had been guilty of such fraud or dishonesty

in his capacity as plaintiff's cashier as to constitute embezzlement, there being no question of larceny. The evidence falls short of showing that the acts of Woolf constituted embezzlement. It was not shown that the drafts drawn on the St. Louis company were wrongful. So far as the record shows, Myers may have had the right to make the drafts. The refusal of the drawee to pay the drafts may have arisen out of some dispute as to the quality or quantity of the produce shipped, or of inability to pay them. There is an entire absence of proof as to whether or not Redfern & Co. was indebted to Myers except the statement of Woolf that Myers told him the produce had been shipped. There was no evidence of an intent upon the part of Woolf to convert the funds of the bank to his own use or to the use of his firm. [Reed v. Fidelity Co., supra; Monongahela Coal Co. v. Fidelity, etc., Co., 94 Fed. 732; State v. Cunningham, 154 Mo. 161; State v. Schilb, 159 Mo. 130.]

The defendant has presented other grounds for reversal, but, as what has already been said disposes of the case, there is no necessity for their consideration.

Cause reversed. All concur.