UNITED STATES FIDELITY & GUARANTY CO. OF BALTIMORE, MD., v. HUGHES.

No. 196.

Circuit Court of Appeals, Tenth Circuit.
April 14, 1930.

N. A. Gibson, of Tulsa, Okl. (Joseph L. Hull and West, Gibson, Sherman, Davidson & Hull, all of Tulsa, Okl., on the brief), for appellant.

George B. Schwabe, of Tulsa, Okl., for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

LEWIS, Circuit Judge.

This is an appeal from a judgment for $10,000, the full amount named in a bond in which appellant as surety for William Carl Lauer agreed to indemnify the First National Bank of Kiefer, Oklahoma, Lauer's employer, and to "make good and reimburse to the said employer such pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of the said employee in connection with the duties of his office or position, amounting to embezzlement or larceny." The bond further provided: "That should the employee become guilty of an offense covered by this bond, the employer will immediately on being requested by the surety to do so, lay information before a proper officer covering the facts and certifying the same as required by law, and furnish the company every aid and assistance, not pecuniary, capable of being rendered by the employer, his or its agents and servants, which will aid in bringing the employee properly to justice, and such action when required of the employer shall be a condition precedent to recovery under this bond."

The claimed breach of the bond is that Lauer, president of the bank, on October 9, 1925, withdrew $6,500 in currency from the Exchange National Bank of Tulsa on account of the Kiefer bank and deposited it in the First National Bank of Tulsa to the credit of the Farmers' National Bank of Beggs, Oklahoma, and for which the Kiefer bank did not receive anything in return; also that Lauer on February 1, 1926, caused the Exchange National Bank to charge the account of the Kiefer bank with $8,000 and place that amount as a credit to the Beggs bank in the First National Bank of Tulsa. The Kiefer bank received nothing out of this transaction, and its books did not show either of said transfers of funds until some time after the transaction. Lauer received no compensation, profit, or benefit from these transfers of his bank's funds. He caused them to be made at the request of one R. E. E. Steglieder and for his accommodation, in the belief or hope that Steglieder would reimburse the Kiefer bank. Steglieder owned approximately fifty per cent. of the capital stock of the Kiefer bank, and he seems to have controlled and dictated its management and policy. Because of these transfers and other acts of Lauer as the bank's president prior thereto for the benefit of and to accommodate Steglieder the bank became insolvent, was closed early in March, 1926, and a receiver was appointed. He brought this suit. After the $6,500 transaction Steglieder and his brother put some notes in the Kiefer bank. They went into the bank's assets and were found to be worthless. They also turned over to the bank other notes shortly before it closed, which Lauer said were to be used to straighten out the bank's affairs and balance its books. They amounted to more than $30,000 face value, but their real value does not appear.

Appellant assigns error that the court directed a verdict for plaintiff; and counsel for appellant presents two points in support of the assignment, (1) the acts of Lauer on October 9, 1925, in transferring the $6,500, and on February 1, 1926, in transferring the $8,000 amounted, in neither transaction, to "embezzlement or larceny," hence neither constituted a breach of the obligation of the bond, and (2) if those terms (embezzlement or larceny) are to be taken in their broad generic sense, meaning loss to the bank through fraudulent or dishonest conduct on the part of Lauer but not amounting to embezzlement or larceny, then the bond was not in force at the time of the two transfers of the bank's funds, because of an express con-

dition of the bond to be hereinafter considered.

1. On the first proposition the adjudications are not in harmony, some holding that the words "embezzlement or larceny" do not limit or qualify the preceding words "fraud or dishonesty of the said employee," that the proof need not show or tend to show that the employee was guilty of either crime, that embezzlement and larceny should be taken in their generic sense—meaning any financial loss sustained through the fraud or dishonesty of the employee. This view seems to be supported by Delaware State Bank v. Colton, 102 Kan. 365, 170 P. 992; Green v. United States Fidelity & Guaranty Co., 135 Tenn. 117, 185 S. W. 726; Rankin v. United States Fidelity & Guaranty Co., 86 Ohio St. 267, 99 N. E. 314; Champion Ice Mfg. & Coal Storage Co. v. American Bonding & Trust Co., 115 Ky. 863, 75 S. W. 197, 103 Am. St. Rep. 356; City Trust, S. D. & S. Co. v. Lee, 204 Ill. 69, 68 N. E. 485. In the Champion Ice Mfg. & C. S. Co. Case, it was said that the words embezzlement and larceny were used as generic terms to indicate the dishonesty and fraudulent breach of any duty or obligation upon the part of the employee. However, the court said in that case that the dishonest and fraudulent conduct of the employee constituted an act of embezzlement. In some of the cases just cited the courts were apparently impressed with the conceded rule that where there is ambiguity in an insurance policy it is to be resolved against the party who prepared it, the insurer. But we see no occasion for the application of that rule. There is no uncertainty or ambiguity in the terms used in this bond. The two words used, designating crimes, are familiar in the terms of the law, they have a settled definite meaning, and we know of no principle that would justify us in deleting them. Opposed to the rule announced in the cases above, are Guarantee Co. v. Mechanics' Sav. Bk. & Tr. Co. (C. C. A.) 100 F. 559; Dominion Trust Co. v. National Surety Co. (C. C. A.) 221 F. 618, Ann. Cas. 1917C, 447; Ætna Indemnity Co. v. J. R. Crowe Coal & M. Co. (C. C. A.) 154 F. 545; Milwaukee Theater Co. v. Fidelity & Casualty Co., 92 Wis. 412, 66 N. W. 360; Reed v. Fidelity & Casualty Co., 189 Pa. 596, 42 A. 294; Williams v. United States Fidelity & Guaranty Co., 105 Md. 490, 66 A. 495; Farmers' State Bank v. Title Guaranty Co., 133 Mo. App. 705, 113 S. W. 1147. The last-quoted paragraph of the bond strengthens somewhat appellant's contention, that appellant is not liable unless Lauer's fraudulent or dishonest conduct amounted to embezzlement or larceny. Clearly, it did not amount to larceny. All of the funds came into Lauer's possession lawfully. He obtained none of it animo furandi. Did it amount to embezzlement? Neither offense, if committed by Lauer, was an offense against the state. It could be an offense only against the United States, which has exclusive power over national banks, of regulation and protection. In Easton v. Iowa, 188 U. S. 220, 23 S. Ct. 288, 47 L. Ed. 452, it was held that an officer or agent of a national bank could not be criminally prosecuted in the State courts for the commission of an offense under a State statute which made it a crime for such an officer or agent to receive deposits after knowing the bank to be insolvent. State statutes have defined embezzlement differently, and also differently from the definition given by the English statutes. We find no definition of the crime in the Acts of Congress, applicable to the facts here, and none has been called to our attention. Counsel for appellant calls our attention to a definition of embezzlement by Circuit Judge Taft, in charging the jury in United States v. Youtsey, 91 F. 864, at page 867: "Embezzlement is the unlawful conversion by an officer of the bank to his own use of funds intrusted to him, with intent to injure or defraud the bank." The prosecution in that case was under section 5209 R. S. U. S. (12 USCA § 592), which does not define embezzlement but makes it a crime for any bank officer or agent to embezzle, abstract, or willfully misapply any of the moneys, funds or credits of the association.

In United States v. Northway, 120 U. S. 327, 7 S. Ct. 580, 583, 30 L. Ed. 664, after noticing that an indictment alleging that the moneys and funds charged to have been embezzled were at the time in the possession of the defendant as president and agent of the bank, the court said:

"In respect to those funds, the charge against him is that he embezzled them by converting them to his own use. This we think fully and exactly describes the offense of embezzlement under the act by an officer or agent of the association."

As to the $6,500 that Lauer withdrew out of the Exchange National on account of the Kiefer bank in currency, and then placed it in the First National to the credit of the Beggs bank, we think there can be no doubt that he was guilty of embezzling that sum. He did it to accommodate Steglieder. In a

very proper sense he converted that sum to his own use, and the evidence shows that when he did it he was apprehensive that it would be to the detriment and injury of his bank. It was not necessary that he profit by the transaction. He took his bank's money and wrongfully used it. But we are unable to see how the $8,000 transaction can be said to amount to embezzlement. That consisted only of book entries, made at Lauer's direction. He had the Exchange National debit his bank with $8,000 and the First National, as a part of the same transaction, credit that sum to the Beggs bank. But false or improper book entries do not constitute embezzlement. They were no more than means used by which the funds of the bank were to be misapplied or abstracted, which are other prohibitions of section 5209.

■ 2. The bond was issued upon named express conditions, among them this: "That on the discovery of any act capable of giving rise to a claim hereunder, the employer shall, at the earliest practical moment, give notice thereof to the company"; and counsel for appellant insists that this condition was violated by the employer. In support of that contention appellant offered an allegation found in the complaint, to wit: "The National Bank Examiner, examined the accounts and financial condition of said bank on October 5, 1925. As a result of the examination, the Bank Examiner required the stockholders of the said bank to remove promissory notes of the face value of $19,447.11 from the assets of the bank, and to replace the said notes with money in the said sum represented by the face value of the notes. The stockholders of the said bank complied with the requirements of the Bank Examiner, in this respect, by placing the sum of $19,447.11 in cash in the assets of said bank on October 5 and 6, 1925." From the testimony of Lauer it fairly appears that he had permitted Steglieder to overdraw by checks on the bank, his account in approximately the sum stated in the complaint. The bank examiner called the officers and directors together and went over the conduct of Lauer in accommodating Steglieder in this way: Lauer instead of showing Steglieder's account overdrawn by his checks, carried the checks as cash items.

Evidently the examiner held this to be a very improper practice and he demanded that Lauer resign his position as president of the bank. He insisted that he should not continue longer in charge, but the directors would not and did not remove Lauer from his position as president, although he expressed a willingness to resign. It is insisted by appellant's counsel that Lauer's conduct in the respect noted, all to the knowledge of the other bank officers and its directors, at least as early as October 5, 1925, was "an act capable of giving rise to a claim hereunder," that appellant was not given notice of Lauer's said conduct and because of the bank's failure to give it notice in that regard the said condition of the bond was violated and appellant released from further obligation thereon. We find no express provision in the bond declaring that it shall be void if the notice of prior misconduct is not given, but accepting that requirement as a condition to the continued validity of the bond, we think it cannot be properly held that Lauer's conduct in cashing Steglieder's checks on the bank when he had no deposit therein constituted embezzlement. It was not capable of giving rise to a claim under the bond. Appellant, as already said, was not liable for Lauer's fraud or dishonesty that did not amount to embezzlement or larceny.

Our conclusion is, appellant is liable for the $6,500 embezzled by Lauer on October 9, 1925, and that $3,500 should be remitted from the amount recovered as of the date of the judgment. It will therefore be ordered that the judgment be reversed unless within twenty-five days from the filing of this opinion appellee files in the clerk's office of the District Court for the Northern District of Oklahoma a remittitur of said $3,500 as of said date, and within ten days thereafter files with the clerk of this court a certified copy of the remittitur so filed. If such remittitur and certified copy be so filed the judgment, less the amount so remitted, will be affirmed. If such remittitur and certified copy be not filed within the time aforesaid, the judgment will be reversed and the case remanded. If the remittitur is not filed and certified, costs will be taxed against appellee, otherwise against appellant.