## THOMPSON v. UNITED STATES FIDELITY & GUARANTY CO.

### No. 1804.

District Court, D. Idaho, S. D.
June 14, 1933.

John W. Graham, of Twin Falls, Idaho, and Hawley & Worthwine, of Boise, Idaho, for plaintiff.

T. L. Martin, of Boise, Idaho, for defendant.

CAVANAH, District Judge.

This case involves the application of the facts alleged in the complaint to provisions in the bond sued upon given by the defendant surety to the Twin Falls National Bank wherein it agreed to "make good and reimburse the Employer by reason of the fraud, or dishonesty of said Employee in connection with the duties of his office or position, amounting to embezzlement or larceny."

The defendant demurred to the complaint, and moves to strike upon the ground, among others, that the liability assumed by the bond is limited to acts of "embezzlement or larceny" on the part of J. A. Keefer, cashier of the bank, the employee named in the bond. Other provisions of the bond are: "Second, That the Company shall not be liable, by virtue of this bond, for any act or thing done or left undone by the Employee, in obedience to, or in pursuance of any instruction or authorization received by him from the Employer or any superior officer. * * * Fifth, That should the Employee become guilty of an offense covered by this bond, the Employer will immediately on being requested by the surety to do so, lay information before a proper officer covering the facts and verify the same as required by law, and furnish the Company every aid and assistance, not pecuniary, capable of being rendered by the Employer, his or its agents and servants, which will aid in bringing the Employee promptly to justice, and such act when required of the Employer shall be a condition precedent to recovery under this bond." And: "Tenth, This bond will become void as to any claim for which the Company would otherwise be liable, if the Employer shall fail to notify the Company of the occurrence of the act or omission out of which said claim shall arise immediately after it shall come to the knowledge of the Employer; and the knowledge of a president, vice president, director, secretary, treasurer, manager, cashier or like executive officer shall be deemed under this contract to be knowledge of the Employer."

What, then, is the liability which the defendant seeks to limit? It is manifestly a liability to be determined with reference to the obligations which were expressly assumed by the surety and acts of the cashier limited by reason of fraud or dishonesty, amounting to "embezzlement or larceny" falling within the bond. The solution of the principal problem depends upon whether the acts of J. A. Keefer, the cashier of the bank, relied upon by the plaintiff, constitute a breach of the obligations of the bond amounting to "embezzlement," for it is not claimed they amounted to larceny.

As receiver of the Twin Falls National Bank, which suspended business on November 21, 1931, the plaintiff asserts in his complaint that the defendant executed its bond to the bank containing the above provisions in which it became surety of J. A. Keefer, cashier, and while it was in force, and as such cashier, J. A. Keefer cashed from the funds of the bank certain checks of the Filer Livestock Company, Jerome Livestock Company, Shoshone Livestock Company, Keefer Department Store, and the Rogerson Hotel Company in the sum of $9,815.67, with knowledge that these companies were insolvent and unable to pay their current bills and obligations and without any deposit in the bank with which to pay the checks, and after so cashing them he held the checks in the bank as cash. He and Joseph Keefer were stockholders and had control of said companies. J. A. Keefer, as such cashier, did also cash the checks of L. F. Hostettler in the sum of $541.68 out of cash of the bank without Hostettler having a balance in the bank, and when he was insolvent and unable to pay his current bills and obligations; that at various times loans were made by the bank acting through J. A. Keefer, its cashier, to these companies in excess of 10 per cent. of the bank's then capital and surplus, in amounts of $2,750 to the Filer Livestock Company, $3,950 to L. F. Hostettler and Amanda Hostettler, $3,750 to Jerome Livestock Company, $31,349.97 to the Rogerson Hotel Company, and $4,250 to the Shoshone Livestock Com-

pany. On November 13, 1931, J. A. Keefer drew as advance on his salary $125 from the cash of the bank with knowledge that the bank would close. Joseph Keefer was at all these times president and a director of the bank, had control and management thereof, and was cognizant of the condition of its financial affairs, assets, and liabilities, and cognizant of the wrongful acts of the cashier, acquiesced in them, and in general directed and dictated the acts of the cashier. Due to the control and domination of the bank by Joseph Keefer and J. A. Keefer, none of the acts complained of were discovered until after the closing of the bank by the receiver, who on January 13, 1932, gave written notification to the defendant, and thereafter on February 16, 1932, filed proof of loss under the terms of the bond. A further general allegation is set forth stating that the cashier in doing the acts referred to fraudulently appropriated the moneys of the bank contrary to the lawful execution of his trusts as such cashier, and that it was fraud and dishonesty amounting to embezzlement.

█ If we turn to the facts pleaded and view the provision of the bond "by reason of fraud or dishonesty amounting to embezzlement" in the light of the meaning of the word "embezzlement" as defined by the courts, the acts of the cashier do not constitute "embezzlement" and a breach of the obligations of the bond. There was no thought of the parties to extend the application of the expression "embezzlement" to acts of the cashier when in taking part with the president of the bank in making excessive loans and recognizing overdrafts when we face and answer the second and tenth provision of the bond where it is expressly stated that the surety shall not be liable, by virtue of the bond, for any act done by the cashier in obedience to, or in pursuance of, any instruction or authorization received by him from any superior officer, and that the bond will become void as to any claim if the employer shall fail to notify the surety of the occurrence of the act out of which any claims shall arise immediately after it shall come to the knowledge of the president. Here the intention of the parties is revealed too distinctly to permit us to ignore the express language adopted as applied to the facts here. We are told in no uncertain words that the president of the bank had knowledge of the acts of the cashier, acquiesced in, and in general directed and dictated, them. The cashier's acts were authorized by his superior officer, the president of the employer bank, which under

the bond relieved the surety of liability. The president's failure to notify the surety of the occurrence of the acts was due to the fact that he had authorized and directed them, and in doing so they were not such acts of the cashier as contemplated by the bond which required notice to be given to the surety. But, if the case assumes the aspect urged by the plaintiff that these acts were those of the cashier, and do not come under the provisions of the bond relieving the surety from liability, yet we are still confronted with the clear provision of the bond that the surety shall not be liable for any act done by the cashier if the employer fails to give notice to it of the occurrence of the acts immediately after it has come to the knowledge of the president. This was not done. The parties contracted that no liability should attach unless the specific notice had been given. Dominion Trust Co. v. National Surety Co. (C. C. A.) 221 F. 618, Ann. Cas. 1917C, 447; United States Fidelity & Guaranty Co. et al. v. Gray, 106 Okl. 222, 233 P. 731; Shawnee Fire Insurance Co. v. Beaty, 64 Okl. 61, 166 P. 84; New Amsterdam Casualty Company v. Central National Fire Insurance Co. (C. C. A.) 4 F.(2d) 203. The law will not alter a contract for the benefit of one party and to the detriment of the other. Maryland Casualty Co. v. Bank of England (C. C. A.) 2 F.(2d) 793; Southern Surety Company v. MacMillan Co. (C. C. A.) 58 F.(2d) 541. No judicial duty devolves on the court of construction of this provision of the bond, as it is clear as to time and manner of notice, and no liability shall attach, unless such notice is given. It is a condition precedent to suit before a recovery can be had.

██ A surety not being liable beyond the terms of its contract, its obligation may not be extended by construction. American Bonding Co. v. Pueblo Inv. Co. (C. C. A.) 150 F. 17, 9 L. R. A. (N. S.) 557, 10 Ann. Cas. 357. There is no ambiguity in the terms used in the bond here which is subject to two different constructions. The word "embezzlement" used, designating a crime, is familiar under the terms of the law. It has a definite meaning. United States Fidelity & Guaranty Co. v. Hughes (C. C. A.) 40 F.(2d) 34. The acts of the cashier by reason of fraud or dishonesty amount to the specific act or crime of "embezzlement." The character, nature, and extent of the personal dishonesty against which the surety undertook to protect the employer must amount to "embezzlement." It must be ascertained from the meaning of the word by which the undertaking is limited in

connection with the circumstances with respect to which the undertaking relates. Dominion Trust Co. v. National Surety Co., supra. The loss must arise out of embezzlement by the cashier, for an analysis of the bond discloses the fraud or dishonesty must be a charge of commission of embezzlement.

Some of the state courts hold that the words "fraud" and "dishonesty" amounting to "embezzlement or larceny" are to be taken in their broad generic sense, and are not words of limitation, but the great weight of authority, and mainly the federal courts, interpret the bond that the fraud and dishonesty must in effect be embezzlement or larceny. The case of United States Fidelity & Guaranty Co. v. Hughes, supra, is relied upon by both plaintiff and defendant. It involves the interpretation of the same provision of a bond as we have here. The court there held that Lauler's act, president of the Keifer Bank of Tulsa, constituted embezzlement as he went to the Exchange National Bank and withdrew $6.500 in currency belonging to the Keifer Bank and deposited it in the First National Bank of Tulsa to the credit of the Farmers' National Bank of Beggs, Okl., for which the Keifer Bank did not receive anything in return. We do not have such a situation here when we consider the acts of the cashier, J. A. Keefer, consisting of allowing overdrafts and making of excessive loans to the companies principally owned by others, and to Hostettler while under the direction and authority of a superior officer, the president of the bank. Ordinarily, overdrafts and excessive loans are, when done with the intent to defraud the bank, treated as misapplication of the funds of the bank and not embezzlement. United States Fidelity & Guaranty Company v. Hughes, supra; United States v. Warner et al. (C. C.) 26 F. 616. So the making of such excessive loans is not criminal, and has no relation to embezzlement. Cockrill v. Cooper (C. C. A.) 86 F. 7, 12. The penalty for so doing is that every director who participated therein is liable in his individual capacity for all damages which the bank has sustained. 12 USCA § 93.

In the case of United States v. Fish (C. C.) 24 F. 585, 593, the defendant, president of the bank, made loans and permitted overdrafts to a company in which he was heavily interested. His acts were concealed from the board of directors of the bank. It was held to be misapplication of the moneys of the bank and not embezzlement. It was there said: "What the defendant did was to allow his firm to overdraw its account under circumstances warranting a finding of the jury that he did this act with intent to defraud the bank of the money. Such an act, done with such an intent, is misapplication of the moneys of the bank within the meaning of section 5209, and the conviction upon the twenty-second count was proper."

Again in United States v. Kenney (C. C.) 90 F. 257, 259, the defendant entered into a conspiracy with one of the paying tellers of the bank whereby his checks were to be cashed and concealed from the proper officers. In this way he secured a large overdraft. The court there held that such act was not embezzlement, but misapplication of the bank's funds with intent to defraud. Compare Walsh v. U. S. (C. C. A.) 174 F. 615; Flickinger v. U. S. (C. C. A.) 150 F. 1.

The argument for the plaintiff that, when the president and cashier acted together in allowing the excessive loans and overdrafts to companies in which the president and others owned nearly all of the stock and the cashier a small percentage thereof, the provisions of the bond relieving the surety from liability when the cashier is authorized by a superior officer to act and failure to give notice to the surety of the acts of the cashier cannot be invoked, is answered when we realize that the bond did not insure against the acts and conduct of the president of the bank in authorizing overdrafts and excessive loans, for the purpose of these conditions was that the surety would not be liable if the acts were authorized by the president and failure to immediately give notice of such acts of the cashier so it may be given an opportunity to protect itself from such further conduct. The fact that the cashier happened to have a small interest in these companies at the times the president authorized the loans and overdrafts would not remove the application and compliance with these conditions of the bond, for, if not, the insured could annul the conditions by its president or any other superior officer to the cashier directing and authorizing the cashier to take part in such acts, and the surety would not have the protection the conditions the bond gives it in having such notice, and of not being liable when the acts complained of were authorized by a superior officer to the cashier.

Tested by these principles when applied to the conditions of this bond and the facts pleaded, the overdrafts and excessive loans, when allowed with the acquiescence and authority of the president of the bank, who di-

rected and dictated them, did not constitute "embezzlement" as required by the bond before a breach thereof can be claimed.

■■ As to the claim that the cashier drew $125 as advance on his salary from the cash of the bank with knowledge that the bank would close, as constituted embezzlement cannot be sustained under the limited facts pleaded, for we are not told that at the time of such withdrawal he knew the bank would be closed at a time before the amount would be earned as such salary. Such advance would not be illegal unless it appears that he knew that the bank would be closed at a time before he would earn the amount, and the amount was withdrawn with the expectation of not rendering services in the future as such cashier to the bank. The president authorized and directed the payment of this advance amount which alone relieves the transaction from liability under the bond.

The motion to strike is directed to removing from the complaint conclusions of law which are not supported by sufficient facts, and it and the demurrer will be sustained.