## BANK OF ENGLAND, ARK., v. MARYLAND CASUALTY CO.

(District Court, E. D. Arkansas. November 17, 1923.)

1. **Insurance ⬅145(1)—Rights determined by provisions of bond as originally executed, renewals being mere extensions.**

   Where renewals of a fidelity bond were mere extensions of the original bond, the liability of insurer must be determined by the provisions of the bond as originally executed.

2. **Insurance ⬅285—Untrue warranties will relieve insurer of liability on fidelity bond.**

   Answers of insured to questions in the application for a fidelity bond, so far as they are warranties, if untrue, will relieve insurer of liability on the bond.

3. **Insurance ⬅285—Condition of fidelity bond relating to truthfulness of insured's statements limited to time of making.**

   A condition of a fidelity bond that "all written statements made in connection with this bond or any renewal thereof are warranted to be true" must be limited to the time the questions in the application were answered.

4. **Insurance ⬅304, 646(3½)—Promissory warranties are conditions subsequent; insurer under fidelity bond has burden of establishing breach of promissory warranty.**

   Promissory warranties, obligating applicant for a fidelity bond to do certain things considered to be material to the risk, are conditions subsequent, and insurer has the burden of establishing a breach.

5. **Insurance ⬅389(6)—Promissory warranty, requiring insured to examine employee's account monthly, held waived.**

   In an action on a fidelity bond, the promissory warranty of insured, a bank, that monthly examination of employee's account would be made, was waived by execution of the bond, where the application also stated that no examination would be made, other than by the state and national bank examiners, in view of Crawford & Moses' Dig. Ark. § 705, requiring the state bank examiner to make such examinations at least once a year.

6. **Insurance ⬅389(7)—Acceptance of application without answer to question in application waiver thereof.**

   Acceptance of an application for a fidelity bond, and execution of the bond, without an answer to a question in the application, is a waiver thereof.

7. **Insurance ⬅332(1)—Failure to give notice of employee's promotion not prejudicial to insurer issuing fidelity bond.**

   That insured failed to notify insurer that employee had been promoted from a bookkeeper, whose duties were to "keep books and assist the teller," to assistant cashier and her salary raised three times, *held* not prejudicial to insurer where her embezzlements were in the discharge of her duties as bookkeeper and assistant teller, and hence not fatal to a recovery on a fidelity bond.

8. **Principal and surety ⬅59—Rule of strict construction not applicable to surety companies.**

   The rule of strictissimi juris applied to guarantees by individuals as a personal favor and without remuneration, does not apply to surety companies executing fidelity bonds for a stipulated compensation.

9. **Principal and surety ⬅99—Surety company not relieved by change in contract, unless harm results.**

   Surety companies are not relieved by a change in the contract, unless the change results in harm to them.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. Action by the Bank of England, Ark., against the Maryland Casualty Company. Judgment for plaintiff.

### Findings of Fact.

As the facts are practically undisputed, and the defenses relied upon at the hearing were limited to those hereinafter set out, it is unnecessary to make special findings on some of the denials in the answer, which counsel for the defendant waived.

The defendant is a corporation, engaged under its charter in writing surety bonds; the plaintiff is a bank in the small town of England, Ark., with a capital of $25,000. On July 20, 1917, the defendant executed its policy to the plaintiff for the term of one year, in consideration of the payment of a premium paid it by the plaintiff, whereby it covenanted "to reimburse the plaintiff, after proof of loss, to the extent of $10,000 for such loss of money, securities, or other personal property belonging to or in the possession of the employer, for which the employer is legally liable, which the employer shall have sustained by reason of any act or acts constituting larceny or embezzlement committed by the employee, Miss Mamie McKenzie," described as "bookkeeper." The policy contains a number of conditions which the policy declares "shall be deemed conditions precedent to any right of the employer to recover thereon."

It is unnecessary to set out any other of the conditions than those relied on by the defendant as a defense, which will be set forth later. The policy was renewed annually, the last renewal being for the year ending July 20, 1923. About January 23, 1923, the bank discovered for the first time that Miss McKenzie, the employee insured, had embezzled of the funds of the plaintiff the sum of $8,800, whereupon it immediately notified the defendant of it, and that she had made a written confession admitting said shortage, and on February 15, 1923, it filed its proper proofs of loss as, required by the terms of the policy. The defendant at once notified plaintiff that it refused payment, upon the ground that plaintiffs had breached the conditions of the bond.

Before the original bond was executed by the defendant, the defendant required the plaintiff's president to answer certain questions in the application for the policy. The questions and answers therein are quite numerous, but for the purpose of this action it is only necessary to set out those which defendant in its answer relies on as relieving it from liability. It is alleged in the answer that;

"II. Further answering, defendant states that on July 16, 1917, Mamie McKenzie made written application to defendant for a bond to date from July 20, 1917, for $10,000, in favor of plaintiff, as security to cover her position as bookkeeper, in which she stated that her official title was bookkeeper and that she was acting as teller and receiving a salary of $50 per month.

"Defendant states that, before passing on said application or executing said bond, it sent to plaintiff a written communication stating that application had been made to it to issue plaintiff a fidelity bond for Mamie McKenzie as bookkeeper in plaintiff's services at England, to the amount of $10,000, and that before passing on the said application defendant must have an answer to a list of questions contained therein, and stated that said bond could not be executed until this form was fully completed and returned to the defendant.

"Defendant states that said written statement contains the statement that 'it is agreed that the above answers shall be warranties and form a part of, and be conditions precedent to the issuance, continuance, or any renewal of or substitution for, the bond that may be issued by the Maryland Casualty Company, in favor of the undersigned, upon the person above named, to wit, Mamie McKenzie.'

"Defendant states that among said questions and answers were the following:

"'7. (a) What will be the title of the applicant's position? Answer: Bookkeeper.

"'(b) Explain fully his duties in connection therewith. Answer: Keep the books of the bank and assist teller.

" '8. What salary will the applicant receive? Answer: $50.00.'

"Defendant states that on January 8, 1918, Mamie McKenzie was elected by the board of directors of plaintiff bank to the office of assistant cashier and that her salary was increased to $85 per month, and that on January 14, 1919, her salary as assistant cashier was increased to $110 per month, and that on January 13, 1920, her salary was increased to $135 per month.

"Defendant states that Mamie McKenzie, after her election as assistant cashier, assumed the duties of said cashier of said bank, including all of the usual duties incident to the cashier of the bank, which were duties of a higher nature, and involved considerable more responsibility and control of the affairs of said bank, than the duties of a bookkeeper or teller.

"Defendant states that said written statement contains the following questions and answers:

" 'In case of the applicant acting as teller or handling cash, will he be required to balance his cash daily, and report same to his superior officer? Answer: Yes.'

" 'Will a record of such a report be kept? Answer: Yes.'

"Defendants state that Mamie McKenzie was not required to balance her cash daily, and did not do so, and did not report same to any superior officer, and that no record of such report was kept.

"Defendant states that among the questions and answers in said written statement were the following:

" 'In case of applicant handling cash or securities, how often will the same be examined and compared with the books, accounts, and vouchers, and by whom? Answer: Monthly.'

"Defendant states that Mamie McKenzie handled cash, and that the same was not examined and compared with the books, accounts, or vouchers monthly."

"Defendant states that among said questions and answers contained in said written statement were the following:

" 'Has applicant always faithfully, honestly, and punctually accounted to you for all moneys and property heretofore under his control or custody as your employee? Answer: Yes, sir.'

" 'Are applicant's accounts at this date in every respect correct and proper securities, property, and funds on hand to balance his account? Answer: Yes.'

"Defendant states that if it were true, as alleged, that Mamie McKenzie was guilty of peculations and embezzlement, the same were committed for several years before July 20, 1923, and that, according to the bill of particulars filed herein, they consisted of numerous failures to account for moneys under her control or custody for a period dating more than three years prior to July 20, 1923.

"Defendant states that, if the allegations of said complaint are true in that respect, applicant did not faithfully, honestly, and punctually account to plaintiff bank for all moneys or property under her control or custody, and the applicant's accounts at the date of the execution of said written statement, and at the date of each renewal of said bond as hereinafter set out, were not correct and proper, and did not balance with the funds on hand."

Another plea in the answer is:

"Defendant states that, pursuant to and on the faith of the written statements made in said written statement of July 18, 1917, which were agreed to be warranties and to form a part of and to be conditions precedent to the issuance, continuance, renewal, or substitution for the bond that might be issued by defendant company the defendant company issued, executed, and delivered to plaintiff bond No. 105638, in the amount of $10,000, which bond recited that whereas, Miss Mamie McKenzie, of England, Arkansas, thereinafter called the employee, had been appointed to the position of bookkeeper in the services of the Bank of England, thereinafter called employer; and whereas, the employer had delivered to the Maryland Casualty Company, thereinafter called the company, certain written statements relative to the employee, his conduct, duties, employment, and accounts, the manner of conducting the business of the employer, and other things connected with the

issuance of said bond: Now, therefore, said bond is issued for the period from July 20, 1917, to July 20, 1918, and that defendant covenanted and agreed that it would within three months next after proof of loss satisfactory to the defendant had been filed, according to conditions and provisions of said bond, make good and reimburse the employer to the extent of the sum of $10,000 for such loss of money belonging to and in the possession of employer, which the employer shall have sustained by reason of any act or acts constituting larceny or embezzlement committed by the employee; but said bond provided that it was executed upon the following express conditions, which should be deemed conditions precedent to any right of the employer to recover thereunder:

" 'First. That the acceptance and retention of this bond by the employer shall be considered as conclusive evidence that the employer consents and agrees to all the terms, conditions and provisions contained therein, and all written statements made, or which at any time may be made by the employer, in connection with this bond, or any renewal thereof, are warranted by the employer to be true, and if any such statements shall be found to be untrue in any particular, or if the employer shall willfully suppress or misstate any fact in making any claim for, or in proving, any loss under this bond, then this bond shall become void, and the company shall not be liable to the employer for any claim whatsoever made under or by virtue of this bond.

" 'Second. That the duties of the employee, the system of accounting, the safeguards established, and the method of compensation shall all remain in accordance with the written statements hereinbefore referred to, unless change therein shall be consented to, in writing, by the company.'

" 'Ninth. That the employer has no knowledge of any act of fraud or dishonesty on the part of the employee, committed while in the service of the employer or elsewhere; that if, at any time during the term of this bond, or any renewal thereof, the employer shall discover or in any way learn of any act or fact, or receive any information tending to indicate that the employee is or may be intemperate, or that the employee is or may be gambling or indulging in other vices, the employer shall immediately give notice thereof by letter addressed to the company at its principal offices in Baltimore, Maryland, and no condonation of any such act or compromise of any loss shall be made by the employer without the written consent of the company, and the company shall not be liable for any loss subsequently incurred by the employer through any act of the employee, unless the company shall have had such notice as herein provided for, and shall have consented, in writing, to continue its liability under this bond for the employee.'

" 'Twelfth. This bond may be renewed from year to year at the option of the employer by and with the consent of the company, and in case of any such renewal the company's liability on behalf of the employee shall be in all respects as though this bond had been originally written for a term including the period of such renewal.'

" 'Fifteenth. That none of the conditions of this bond shall be deemed to have been waived or altered in any respect by the company, unless such waiver or alteration shall be in writing over the signature of the president of the company, or one of its vice presidents, sealed with its seal and attested by its secretary, or one of its assistant secretaries.'

"Defendant states that said bond was renewed annually by the issuance and delivery of a renewal certificate continuing said original bond in force for another year, subject to all of the covenants and conditions of said original bond theretofore issued, from the 27th day of July, 1917, and thus annually reiterated the answers in said written statement of July 16, 1917.

"Defendant states that the statements which it is heretofore alleged to have been untrue constituted breaches of warranties, and rendered said policy and all renewals thereof null and void, and defendant alleges that the falsity of the answers to each of the questions above set out constitute separate and distinct breaches of warranty, and render said bond and all renewals thereof null and void, and barred plaintiff from any recovery under said bond or any of said renewals.

"Defendant states that during the time covered by said renewals the em-

ployer discovered and learned of acts and facts, and received information tending to indicate that Mamie McKenzie was intemperate and indulging in acts covered in the ninth provision of said bond heretofore quoted, but that plaintiff failed to give notice thereof to defendant company, and defendant alleges that said knowledge and failure to give notice thereof forfeited any right of plaintiff to recover under said bond or any renewals thereof. A copy of said written statement, dated July 16, 1917, is attached and made Exhibit A, and made a part hereof."

·The court finds the facts on these pleas as follows:

That the allegations relating to the questions and answers in the application are correctly set out in paragraph 2 of the answer, except that it omits the question and answer in 11 (b), which will be set out later; that the conditions in the policy are correctly copied in paragraph 3 of the answer; that all the peculations and embezzlements by the employee insured occurred within three years prior to the institution of this action (although the statute of limitations of Arkansas for actions on written instruments is five years); that the peculations and embezzlements of the employee insured amount to $8,800; that in addition to the questions and answers set out in the second paragraph, "In case of appellant handling cash or securities, how often will the same be examined and compared with the books, accounts and vouchers and by whom? Answer. Monthly"—there was an additional question and answer, in the same paragraph, marked (B) the other being 11 (a). 11 (b) reads: "Will any examination of the applicant's accounts be made outside of the audit of the state or national bank examiner?" to which the answer is, "No."

The evidence establishes, and the court so finds, that the only examinations made of the applicant's accounts, vouchers, and books, during the entire time the bond and renewals were in force, were made by the state examiner, those for the years 1917 and 1919 only once a year, and since then twice annually, and there was no waiver by the surety company, if monthly examinations were required by the terms of the bond.

The court further finds that the bank neither discovered nor learned of acts or facts, or received information tending to indicate, that Mamie McKenzie was intemperate and indulging in acts covered by the ninth provision of the bond, nor that she was guilty of or indulged in any acts covered by the provisions in said ninth condition, nor is there any evidence that she was guilty of any one of these acts. The court further finds that all answers of the plaintiff in the application as to existing facts were true, and that it did not willfully suppress or misstate any fact in making any claim for or in proving its loss. The court finds that after execution of the bond, and while it was in force, the applicant was made, in addition to being bookkeeper and assistant teller, assistant cashier, and as such was authorized, in addition to her duties as bookkeeper and assistant teller, to sign drafts and cashier's checks, and that this additional duty was not consented to in writing by the defendant, but that none of the peculations or embezzlements complained of were due to her duties as such assistant cashier, but they were all committed by her in the performance of her duties as bookkeeper and assistant teller.

The court also finds, after the applicant had been made assistant cashier, her salary was raised three different times, from $50, the salary she received at the time of the application, as stated by the bank; the last raise increasing her salary to $135 a month.

The court further finds that the employees of the plaintiff, at all times the bond was in force, were the president, who only passed on the securities offered on loans for small amounts, but took no active part in the transactions in the bank, pertaining to receiving or paying out moneys or keeping the books. These were attended to exclusively by Mr. Emerson, the cashier, and Miss McKenzie, the applicant.

The court also finds that the charge for the bond by the company as an assistant cashier is the same as for an assistant teller and bookkeeper, and, had the defendant been advised of the additional duties of the applicant and assented thereto, no greater charge for the bond would have been made.

The court finds that the applicant did balance her cash daily and reported the same to her superior officers and the record thereof kept by the bank.

Gray & Morris, of England, Ark., for plaintiff.
Cockrill & Armistead, of Little Rock, Ark., for defendant.

TRIEBER, District Judge (after stating the facts as above). [1-3] The court agrees with counsel for defendant that this cause must be determined by the provisions of the bond as originally executed, the renewals being merely extensions thereof, and the answers of the bank to the questions in the application for the bond so far as they are warranties, if untrue, will relieve the insurer of liability on the bond. That part of the first condition, that "all written statements made in connection with this bond or any renewal thereof [there were no statements made by the bank on the renewals] are warranted to be true," must clearly be limited to the time the questions in the application were answered. In Willoughby v. Fidelity & Deposit Co., 16 Okl. 546, 85 Pac. 715, 7 L. R. A. (N. S.) 548, 8 Ann. Cas. 603, affirmed per curiam in 205 U. S. 537, 27 Sup. Ct. 790, 51 L. Ed. 920, relied on by defendant, the false statements in the application were to existing facts, and not promissory for the future. Therefore it is not applicable to the instant case.

[4] It is true there may be promissory warranties, a breach of which will avoid the bond, as when the applicant obligates himself to do certain things considered to be material to the risk; but such promises are conditions subsequent, and the burden of proof to establish a breach of such promises is on the defendant. Title Guaranty & Surety Co. v. Nichols, 224 U. S. 346, 348, 349, 32 Sup. Ct. 475, 476 (56 L. Ed. 795). In this case the defense was, as in the instant case, that:

"The loss was due to the neglect of the employer to supervise the conduct of the employee by making such monthly examinations of his accounts as it agreed to make or have made."

It was held:

"The plaintiff was plainly entitled to recover upon proving the bond, an embezzlement, and a breach, by a refusal to indemnify. It was not obliged to aver that it had made the examinations which it agreed should be made. If it had failed in that duty, it was for the surety company to so plead and prove."

[5, 6] That a failure of an absolute promissory warranty to make monthly examinations of the applicant's accounts will avoid the policy under the provision of a bond or policy like the one in this case may be conceded, but was there such a warranty? Question 11 contains three questions, subdivision (a) two, and subdivision (b) one. The questions in (a) read:

"In case of applicant handling cash or securities, how often will the same be examined and compared with the books, accounts, and vouchers; (2) and by whom?"

The first part of the question is answered, "Monthly." The second is unanswered. Acceptance of the application and execution of the bond, without an answer to (a) question is a waiver. Phœnix Ins. Co. v. Raddin, 120 U. S. 183, 7 Sup. Ct. 500, 30 L. Ed. 644.

If there were no other answer to that question in paragraph 11, failure to make such examinations monthly by some one would unquestionably be fatal to a recovery on the bond. But (b) of question 11, which reads: "Will any examination of the applicant's accounts be made outside of the audit of the state or national bank examiners?" was answered, "No." The defendant had therefore been advised that the only examination of the applicant's books, vouchers, and accounts would be made by the state bank examiner, and by none other.

The law of Arkansas in force at the time the bond and the renewals were executed and still in force made it the duty of the state bank examiner "to make an examination of every bank  *  *  *  at least once a year." Section 705, Crawford & Moses' Digest of Arkansas Statutes 1921. The defendant was bound to know that the state bank examiner was not required by the laws of the state, nor could he be required by the bank, to make monthly examinations of the bank's books and accounts, nor could it presume that the state bank examiner would make monthly examinations of the bank. Executing its bond with such knowledge was, in the opinion of the court, a waiver of monthly examinations by the state bank examiner, the only person the bank states who was to make the examinations. It did not state that examinations would be made by its officers or by some independent examiners outside of the bank, as contended by counsel. If counsel's contention is to be sustained, a failure of examinations by the officers of the bank, or independent auditors outside of the bank, would be just as fatal to a recovery. A strict construction of these answers, as insisted on, would require monthly examinations by the state bank examiner, and by none other, and his failure to make them monthly would be a fatal breach.

Counsel for defendant rely on Rice v. Fidelity etc., Co., 103 Fed. 427, 43 C. C. A. 270, and National Surety Co. v. Long, 125 Fed. 887, 60 C. C. A. 623, decided by the Circuit Court of Appeals for this circuit. A careful examination of the facts convinces their inapplicability to the instant case. In the Rice Case the question was whether the applicant was the bookkeeper of the assured and authorized to sign checks on behalf of the firm. The questions and answers in that case were:

"10.  (a) Will he be authorized to sign checks on your behalf? Ans. Yes."
"(b) Will the countersignature of any other person be invariably required?
*  *  *  Ans. "Yes.  John W. Gribble, bookkeeper."

The bond contained this recital:

"And whereas, the employer has delivered to the Fidelity & Deposit Company of Maryland, a corporation of the state of Maryland, hereinafter called the 'company,' a statement in writing relative to the duties, responsibilities, and the check to be used upon the employee, in said position, and other matters: Now, therefore, in consideration of the sum of one hundred dollars paid as a premium for the period from July 25, 1895, to July 25, 1896, at twelve o'clock noon, and upon the faith of the said statement as aforesaid by the employer, it is hereby agreed and declared that the company will indemnify the obligees on certain conditions named in the bond."

It was held that the statement that the countersignature by Gribble to all checks drawn and signed by the bookkeeper was a part of the

contract, because "the bond recites that it rests upon the faith of this statement." The bond in this case does not state anything about "a check to be used upon the employee," as it did in that case. Counsel are therefore mistaken, when in their brief they state that the plaintiff bank obligated itself that "it would make monthly examinations of the books."

In the Long Case the bond contained the provision:

"If, at any time, it appears that the above-named principal has abandoned the work, or will not be able, or does not intend, to carry out or perform the contract, the obligee shall immediately so notify the company in writing, by registered letter, prepaid, addressed to the company, at its principal offices in the city of New York, and the company shall have the right, at its option, to assume such contract and to sublet or complete the same, and, if it so elect, all moneys due or to become due thereafter, under said contract, including percentages agreed to be withheld until completion, shall, as the same shall become due and payable under the terms of said contract, be paid to the company, regardless of any assignment or transfer thereof by the principal."

And it was held that a failure to notify·the surety company immediately of the contractor's abandonment of the work released the company of liability on the bond.

Nor is U. S. Fidelity & Guaranty Co. v. Maxwell, 152 Ark. 64, 237 S. W. 708, in point. In that case the bank in the application stated that:

"Examinations of the applicant's accounts would be made twice a year by some reputable auditing firm outside of the audit of the state and national bank examiners."

No examinations by an auditing firm were ever made, nor by any other than the state bank examiner, and this was held to release the surety company. In that case it was also held that:

"A mere reference in a policy to the application does not constitute a warranty, even though the application itself contains a statement that the truth of the statements shall constitute a warranty."

Other authorities cited by counsel have been examined, and received careful consideration, but found to be inapplicable on the facts.

[7] Is the fact that, although in the application the bank stated in reply to question 7 that the title of the applicant's position is bookkeeper, and her duties to "keep the books and assist the teller," and later she was made assistant cashier, and that her salary was raised three times, without the written approval of the surety company, fatal to a recovery on the bond?

[8, 9] It is not necessary to cite numerous authorities that the ordinary rule of strictissimi juris, applied to guaranties by individuals as a personal favor and without remuneration, does not apply to surety companies executing such bonds for a stipulated compensation and as a strictly business enterprise. A leading case is Guaranty Co. v. Pressed Brick Co., 191 U. S. 416, 424, 24 Sup. Ct. 142, 48 L. Ed. 242, followed in Atlantic Trust & Deposit Co. v. Town of Laurinburg, 163 Fed. 691, 90 C. C. A. 274 (8th Ct.), Pittsburgh-Buffalo Co. v. American Fidelity Co., 219 Fed. 826, 135 C. C. A. 488 (3d Ct.), and many others. Nor are such companies relieved by a change in the contract, unless the change has done them harm. American Bonding Co. v. United States, 233 Fed. 364, 369, 117 C. C. A. 300 (3d Ct.); Alabama

Fidelity, etc., Co. v. Alabama Penny Savings Bank, 200 Ala. 337, 76 South. 103.

As to the increase in the applicant's salary, how did it harm the defendant? That she was also made assistant cashier, when the only other duty imposed or required of her was to sign drafts and cashier's checks, certainly did not harm defendant, as the undisputed evidence is, and the court so found, that the embezzlements were all made in the discharge of her duties as bookkeeper and assistant teller, and none as assistant cashier? If the peculations had' been in her capacity as assistant cashier, the result would be different, and the defendant 're-lieved of its liability on the bond.

This disposes of all contested issues, and the conclusion of the court is that plaintiff is entitled to a judgment, with interest from the institution of this action.