GUARANTEE CO. OF NORTH AMERICA v. MECHANICS' SAV.
BANK & TRUST CO.

(Circuit Court of Appeals, Sixth Circuit. March 24, 1900.)

No. 792.

**1. SURETY—CONSTRUCTION OF CONTRACT—BOND OF BANK CASHIER.**
A surety on the bond of a bank cashier, conditioned to make good those losses of the bank which might result from such fraudulent actions of the cashier as were equivalent to embezzlement or larceny, cannot be held liable for the amount of overdrafts on the bank paid by the cashier without authority from the bank, when it is not shown that the cashier received any part of such amount, or any benefit therefrom.

**2. APPEAL—REVIEW—QUESTIONS ARISING UPON THE RECORD.**
Where, in a suit on the bond of a bank cashier, the accuracy of the averments of complainant's pleading as to the amount of the cashier's defalcations was denied by the answer of the surety, and no exception was taken to the sufficiency of such denial, the question whether an item of loss shown to have resulted to the complainant from the action of the cashier was within the terms of the bond is a substantial one, necessarily arising upon the record, and which may be reviewed on appeal, whether specifically called to the attention of the court on the hearing or not.

Appeal from the Circuit Court of the United States for the Middle District of Tennessee.

Wm. L. Granbery, for appellant.

E. H. East, for appellee.

Before LURTON and DAY, Circuit Judges, and EVANS, District Judge.

EVANS, District Judge. The facts in this case are fully stated in the opinion of the court announced when it was previously here, and which is reported in 26 C. C. A. 146, 80 Fed. 766. They need not be repeated, further than to say, generally, that the action is based upon the stipulations of two separate covenants executed by one John Schart to the Mechanics' Savings Bank & Trust Company, with the appellant as surety on each,—one binding the appellant to make good losses which might result from the misconduct of Schart as teller and bookkeeper of the bank, and the other to make good those losses of the bank, not exceeding $20,000, which might result from such fraudulent conduct of Schart, as its cashier, as should be equivalent to embezzlement or larceny. After the case was decided here, it was removed by a writ of certiorari into the supreme court of the United States, where the judgment was reversed upon the single ground that the court had not jurisdiction of the appeal, because the judgment upon which the appeal was taken was not final. 173 U. S. 582, 19 Sup. Ct. 551, 43 L. Ed. 818. Upon the return of the case to the circuit court, a final judgment was rendered. This judgment, however, was substantially the same as the one upon which the first appeal had been taken.

Upon the pending appeal, and as the case is again presented, various errors are assigned, some based upon the judgment of the circuit court as it applied to the teller's bond, and others upon the

judgment as it applied to the bond of Schart as cashier. Without again stating the reasons therefor, which were elaborately given in the former opinion of this court, we deem it sufficient to say that we reaffirm the conclusions of the court then announced, except in respect to that error complained of which relates to the sum of $5,992.35, made up of overdrafts upon the bank which had, without its authority, been paid by the cashier. It is true that this question was also passed upon when the case was heard before, but, coming to us again, we find ourselves unable, as the matter is now presented, to agree to what was then said upon that point. The cashier's bond stipulated that the appellant, as surety, should make good those losses of the bank which might result from such fraudulent actions of Schart, the cashier, as were equivalent to embezzlement or larceny. The obligation of the surety, by its express terms, was limited to that character of wrongdoing upon the cashier's part. The evidence in the case is very explicit that the defalcations of Schart during the period when the cashier's bond was in force, namely, from January 1, 1893, to April 17, 1893, was $22,964.17, of which the sum of $5,992.35 was on account of overdrafts paid by him, but not authorized by the bank. This defalcation, even if it had been in some respects fraudulent, must necessarily have been on account of moneys paid out on the checks of customers who had no funds to their credit to meet them; but it is not shown that Schart embezzled or appropriated any part of the proceeds of these overdrafts, or received any benefit therefrom. If this be true, it is manifest that while Schart was individually responsible for it to the bank, as his principal, no act was done by him which was either embezzlement or larceny, and consequently that the loss was not one which by any fair interpretation would bring it within the obligation of the surety on the bond of the cashier.

It is insisted, however, that this question was not brought to the attention of the court below, and cannot, for that reason, be reviewed here. It is altogether certain that the appellee should not recover from the surety anything which is not embraced within the terms of the contract, and the pleading by which this action was commenced could not properly claim anything else, and in fact did not. By its answer the appellant in plain terms admitted certain abstractions of money by Schart from the funds of the bank, but it by no means admitted (on the contrary, it expressly denied) the accuracy of complainant's averments as to the amount thereof. While this denial of the answer may not have been as explicit as the complainant could have demanded, and as it may have been entitled to demand, still it was in no sense an admission that the charges of the bill were accurate as to the amount of loss that came within the stipulation of the surety. The complainant took no step, by exception to the answer or otherwise, to have the issue on that point made more distinct or definite. This condition of the pleadings left the burden upon the complainant to show the extent of its losses resulting from such fraudulent actions of Schart as were equivalent to embezzlement or larceny. As has been indicated, losses from acts of that character are shown by the evidence only

to the extent of $16,971.82, instead of $22,964.17, as adjudged by the court below; the difference being the amount of the overdrafts which were paid out by Schart, instead of being received by him by any act which in any wise resembled embezzlement or larceny. We think this question legitimately and necessarily arose upon the record when the case was heard upon all the testimony presented, whether the attention of the court was specifically called to it or not before the time of settling the decree, when in fact it does appear to have been urged or at least mentioned to the court. This was not a matter of form, merely, which might be regarded as waived if not insisted upon, but was matter of substance arising upon the record, and vitally affecting the correctness of the court's decree, which must be based upon the record and supported by the evidence. It is not, therefore, too late to insist upon it here, and it appears to us to be entirely obvious that the judgment appealed from was erroneous to the extent indicated, though in all other respects correct.

It results from what has been said that the judgment of the circuit court should be affirmed, except as to so much of the item of $5,992.35 as may have been included in the decree, and so as to limit the recovery on the cashier's bond to $16,971.82, and interest thereon. The case is therefore remanded to the circuit court, with directions to modify its judgment to the extent indicated; the costs of this appeal to be borne equally by appellant and appellee.