GRANGER et al. v. EMPIRE STATE SURETY CO.

(Supreme Court, Appellate Division, Fourth Department.   May 5, 1909.)

1. INSURANCE (§ 430*)—NATURE AND EXTENT OF LIABILITY—INDEMNITY INSUR-
ANCE.

Defendant surety company gave plaintiffs a bond to make good to plain-
tiffs any pecuniary loss sustained by the fraud or dishonesty of employés
named, conditioned that it should not be liable except for personal acts
of the employés within the direct scope of their duties named in the
schedule attached to the bond.  *Held*, that defendant was bound to make
good amounts embezzled by an employé classed as a salesman collected
for goods sold by him, but not personally delivered, and for amounts re-
ceived from his customers, the orders for which he did not personally
take, but defendant was not liable for the purchase price of goods stolen
by him.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 430.*]

2. APPEAL AND ERROR (§ 1154*) — DETERMINATION OF CAUSE — MODIFICATION—
DIRECTING JUDGMENT.

Where the facts on which judgment was rendered in the lower court
were stipulated by the attorneys for the parties, on modification of the
judgment on appeal, final judgment may be directed by the Appellate
Court.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1154.*]

Williams, J., dissenting.

Appeal from Special Term, Erie County.

Action by William H. Granger and others against the Empire State
Surety Company.  Judgment for plaintiffs, and both parties appeal.
Judgment modified and affirmed.

The plaintiffs seek to recover upon a bond of indemnity made by the de-
fendant surety company to the plaintiffs, dated January 1, 1903, covering a
period of one year from that date, by which it undertook to make good and
reimburse to the plaintiffs, upon certain terms and conditions therein named:
"Such pecuniary loss as may be sustained by the employer by reason of the
fraud or dishonesty of any or either of the employés named upon said
schedule, or added thereto, as hereinafter provided in connection with his
duties, as specified on said schedule, amounting to embezzlement or larceny."
The bond further provided:   "And the company shall not be liable for other
than the personal acts of the employés within the direct scope of their duties
named in said schedule or in said notices."  Of the employés named in the
schedule attached to the bond twelve are classified as salesmen, one as
salesman and collector, one as invoice clerk, two as billing clerk, one as
cashier, and one as bookkeeper; but their respective duties are not specifical-
ly defined.  The liability of the surety company is limited to $2,000 for each
employé.  The two persons who defaulted are Eli Ritter and Charles W.
Stone, classified as salesmen.  In the proof of claim made on behalf of the
plaintiffs, it is stated that they were employed in the capacity of salesman
and collector.

It appears that on the 1st day of January, 1903, the date of the bond,
Ritter and Stone were employed by the plaintiffs in the capacity of salesmen,
and to collect the purchase price of goods sold by them or to their customers;
that, in the discharge of their duties, they traveled and visited customers,
and solicited and took orders for the sale of plaintiffs' goods upon credit from
certain designated customers only, and regularly; that no one else in the
plaintiffs' employ or on the plaintiffs' behalf solicited orders or trade from
these customers; that Stone and Ritter also collected the purchase price of
the goods sold by the plaintiffs to such customers, which collections were

made after such goods had been sold and delivered by the plaintiffs to the respective customers, but the goods were never intrusted for delivery to Stone or Ritter, and neither rightfully ever had any possession of such goods; that, when the goods were delivered, the plaintiffs sent invoices of such deliveries to the purchasers, and thereafter sent monthly statements of account to them. It further appears that Ritter stole $929.76 and Stone $1,388.48 during the term of the bond; that $684.16 of the sum stolen by Ritter was collected by him for the purchase price of goods stolen by him from the plaintiffs, and sold and personally delivered by him to the plaintiffs' customers; that $1.78 was collected by Ritter from customers to whom he had regularly sold the plaintiffs' goods for the purchase price of goods the sale of which was not directly effected by him, but by direct orders by telephone from the customers to the plaintiffs; that $143 of the sum stolen by Stone was collected by him from customers to whom he regularly sold the plaintiffs' goods for the purchase price of goods the sale of which was not directly effected by him, but by direct orders by telephone from the customers to the plaintiffs; that the balance of the money stolen by Stone and Ritter was money collected by them during the term of the bond for the purchase price of goods theretofore sold and delivered by the plaintiffs during such term upon orders solicited and procured by Stone and Ritter directly effecting the sale thereof. The trial court held that the $684.16 stolen by Ritter is covered by the bond, that none of the other moneys stolen by either Ritter or Stone is covered by the bond, and judgment was directed only for $684.16, with interest from the commencement of the action. Both parties appeal, the plaintiffs claiming that the bond covers and that the defendant is liable for all the moneys stolen by Ritter and Stone; the defendant contending that it is not even liable for the amount for which judgment was directed against it.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Harry D. Williams, for plaintiffs.
James O. Moore, for defendant.

KRUSE, J. It is urged on behalf of the defendant that none of the moneys collected and misappropriated by Ritter and Stone are covered by the bond, because the default did not arise out of any acts of the employés within the direct scope of their duties as salesmen. It is contended that the duty of a salesman does not include that of collecting the purchase price of goods sold when the sales are made as they were made by these employés, and that, as regards the goods stolen, no recovery can be had for the purchase price thereof for the reason that Ritter and Stone were never intrusted with the delivery of the goods, nor ever had possession of the goods rightfully. If it be true that the bond contemplated that the duties of salesmen did not include either having possession of the goods or receiving the purchase price, it is difficult to conceive any purpose in making the bond at all. Numerous cases are cited by counsel for the respective parties, but in none of them is the obligation and the circumstances so like this case as to afford much light upon the question here presented. In view of the absence of anything in the bond defining the duties of these salesmen, and their actual duties at the time the bond was given, as indicated by the way in which the sales were made to the customers of these salesmen and the purchase price received by them for the goods so sold, it is a reasonable conclusion, as it seems to me, that the bond was intended to cover the moneys received by Ritter and Stone

for goods sold to their designated customers, whether sold upon orders taken by them personally or given directly to the plaintiffs.

But I am unable to see how the defendant is liable for the purchase price of goods stolen by Ritter. The fact is conceded that the plaintiffs never intrusted the delivery of the goods to him, or that he ever rightfully had them in his possession. If the company is only liable for such acts as were within the direct scope of his duties as a salesman, and those duties did not require him to have possession of the goods, the wrongful act was not committed in connection with his employment. Counsel for the plaintiffs assumes that in connection with their duties the salesmen had access to the place where the goods were stored, that they were able to go about the plaintiffs' premises unquestioned, and that they handled the goods within the store; but the record is entirely devoid of any such proof, and, as it seems to me, the facts as stipulated are quite to the contrary.

As regards the money received for the goods and embezzled by the employés, it is different. The bond seems to contemplate that the employés would have possession of moneys belonging to the plaintiffs, since the defalcation must amount to an embezzlement or larceny to make the defendant liable according to the terms of the bond. The amount for which Ritter defaulted is $929.76, and the amount of Stone's defalcation is $1,388.48, making in all $2,318.24. The amount collected by Ritter for goods stolen and sold by him is $684.16, leaving a difference of $1,634.08, for which the defendant is liable.

Upon the facts which the trial court found, none of which is in dispute, as the attorneys for the respective parties stipulated the facts, final judgment may be directed here. Dixon v. James, 181 N. Y. 129, 73 N. E. 673. The judgment should, therefore, be modified by increasing the amount of the plaintiffs' recovery for damages to $1,-634.08, with interest thereon from June 8, 1904, the date specified in the judgment, and, as so modified, affirmed, but, as neither party has been entirely successful here, neither should recover costs against the other upon this appeal. All concur, except WILLIAMS, J., who dissents.