## DOMINION TRUST CO. v. NATIONAL SURETY CO.

### (Circuit Court of Appeals, Third Circuit. April 16, 1915.)

### No. 1905.

**1. INSURANCE ☞146—CONSTRUCTION OF CONTRACTS—FIDELITY INSURANCE.**

The purpose of contracts of fidelity insurance to procure full indemnity should not be defeated, except by clear and unambiguous limitations, assented to by the parties, and all ambiguities of expression, as in other insurance contracts, are to be construed most favorably to the assured.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292, 294–298; Dec. Dig. ☞146.]

**2. INSURANCE ☞430—INDEMNITY INSURANCE—EXTENT OF LIABILITY—NATURE OF EMPLOYÉ'S DISHONESTY.**

Under a surety bond insuring a corporation against loss through the personal dishonesty, amounting to larceny or embezzlement, of its president, the insurer was not liable for a loss due to the act of the president in issuing, in exchange for stock held by him, new certificates for greatly increased numbers of shares, which he sold and pledged, as his acts did not amount to larceny or embezzlement, though the corporation's loss was as complete as if money had been stolen or embezzled.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. ☞430.]

**3. INSURANCE ☞332—INDEMNITY INSURANCE—FORFEITURE—FAILURE TO NOTIFY INSURER.**

Under a surety bond insuring a corporation against loss through the dishonesty of its president, providing that if at any time there should come to the notice or knowledge of the corporation any act, fact, or information indicating that the president was dishonest it should immediately notify the insurer, that upon discovery by it that a loss had been sustained it should immediately notify the insurer and within the time limited make and furnish claim for and proof of loss, and that failure to give such immediate notice or make such claim or such proof should relieve the company from all liability thereunder, where after the president had issued, in exchange for stock, certificates for greatly increased numbers of shares, but before the discovery thereof the corporation discovered that he had stolen cash and securities belonging to it, but, the loss occasioned thereby having been partly repaired, it gave no notice to the insurer, but sought and obtained renewals of the bond, the insurer. was relieved from all liability for the antecedent dishonesty in connection with the issuance of the stock certificates.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 875, 875½; Dec. Dig. ☞332.]

**4. COURTS ☞352—PRACTICE—MATTERS OF FORM.**

The irregularity, if any, in entering a compulsory nonsuit in accordance with the state practice, instead of directing a verdict for defendant, was one of form only.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 926–932; Dec. Dig. ☞352.]

In Error to the District Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action by the Dominion Trust Company, formerly known as the Guardian Trust Company of Pittsburgh, against the National Surety Company. Judgment for defendant, and plaintiff brings error. Affirmed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Wm. C. Jacob, of Pittsburgh, Pa., for plaintiff in error.

Wm. A. Stone, of Pittsburgh, Pa., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. By bond duly executed and delivered, the National Surety Company undertook to reimburse the Dominion Trust Company, which is also described as the employer, for any loss sustained "by or through the personal dishonesty, amounting to larceny or embezzlement, of the employé." The bond was executed August 18, 1909, and was effective from September 1, 1909, to September 1, 1910. Then by various renewals, made upon dates prior to dates of maturity, it was continued from September 1, 1910, to September 1, 1911, and from September 1, 1911, to January 16, 1912, and from that date to January 1, 1913.

This action was brought by the Trust Company on December 28, 1912, to recover on the defendant's bond for loss sustained through the personal dishonesty of William T. Lyon, its president, the employé named in the bond. Lyon's dishonesty was of two kinds, occurring at different times. Recovery is sought, however, for loss occasioned by dishonesty of but one kind, the acts of which are as follows:

Lyon was a stockholder, as well as president, of the Trust Company. He held a number of valid certificates of stock, each being for a very small number of shares. From time to time he surrendered these certificates to himself as president, canceled them, and then as president reissued to himself new certificates for greatly increased numbers of shares. He then sold and pledged the raised certificates. The loss sustained by the Trust Company in meeting its liability upon this fraudulent issue of stock amounted to $41,300, which in part is the sum sought to be recovered by this action.

The Surety Company defended upon two grounds: First, that its obligation of suretyship was restricted to loss sustained by the Trust Company "through the personal dishonesty, *amounting to larceny or embezzlement,* of the employé," and that the dishonesty of which Lyon, the employé, was guilty, was not of the kind against which it had obligated to protect the Trust Company; and, second, that by reason of the failure of the Trust Company to notify the Surety Company of other dishonest acts of the employé, it was relieved of liability for the loss sustained by the acts of dishonesty declared upon.

The District Court directed a judgment of nonsuit, and upon motion refused to take off the judgment. These acts of the trial court constitute the principal errors assigned. There is no question that the Trust Company sustained a pecuniary loss by reason of the personal dishonesty of Lyon, its president. The question is whether the personal dishonesty of which Lyon was guilty was personal dishonesty of the kind against which the Surety Company undertook to save the Trust Company harmless.

[1, 2] In construing contracts of fidelity insurance, we recognize that the general purpose of such contracts is to procure full indemnity, and that this purpose should not be defeated, except by clear and un-

ambiguous limitations, assented to by the parties, and that all ambiguities of expression, as in contracts of fire and life insurance, are to be construed most favorably to the assured. Guarantee Co. v. Mechanics' Savings Bank, 80 Fed. 766, 26 C. C. A. 146. This principle of law, however, admits that the parties may, without ambiguity, assent to limitations in an undertaking of assurance. Such a limitation, we believe, was inserted in the bond sued upon and assented to by the parties. When the Surety Company undertook to make good and reimburse the Trust Company for pecuniary loss sustained by it through the personal dishonesty of its employé, it specified and defined in the bond, the character and the nature, and therefore the extent, of the personal dishonesty against which it undertook to protect the employer, and this was personal dishonesty "amounting to larceny or embezzlement." What amounts to larceny or embezzlement cannot be ascertained by the extent or the certainty of the pecuniary loss sustained, though such loss be in fact as complete as though money were stolen or embezzled. It must be ascertained from the meaning of the words by which the undertaking is limited, considered, in certain cases, in connection with the circumstances, if any there be, with respect to which the undertaking relates.

In maintaining that the dishonesty of its employé amounted to larceny or embezzlement, the Trust Company relied upon the case of the City Trust, etc., Co. v. Lee, 204 Ill. 69, 68 N. E. 485, which was an action upon a bond given by a surety company to indemnify the obligee against loss sustained "through the dishonesty or any act of fraud of Morrow (the employé) amounting to larceny or embezzlement." Morrow was an agent of the obligee. He collected rents for him, and out of the rents was entitled to commissions. It was urged in that case, under a well-known principle of criminal law, that as Morrow had an interest in the funds collected to the extent of his commissions he could not be convicted of embezzlement, and as his dishonesty did not amount to that crime recovery could not be had on the bond. It appeared, however, that in the application for the bond a statement of the nature of Morrow's employment was made, and the court held, in construing the contract of suretyship most strongly against the surety, that the bond "was intended to protect [the obligee] from financial loss *from just such* dishonest acts of Morrow, namely, the failure to account for and to pay over rents collected."

We are of opinion that the law of the case cited is not applicable to the case under consideration, for in this case it does not appear, either from the bond or other instrument connected with its issuance, that indemnity against dishonesty of the type of which Lyon was guilty was sought or intended, and that the acts done by Lyon did not approach larceny or embezzlement within the definition of either of those crimes, but amounted more nearly to forgery, against which the Surety Company did not undertake to protect the Trust Company.

[3] But the record, however, suggests another reason which conclusively precludes recovery by the plaintiff. The bond, by its terms, was "executed by the Surety Company upon the following express con-

ditions," agreed by the parties to "be conditions precedent to the right of the employer to recover," the sixth of which is as follows:

"If at any time after the beginning of the term for which this bond is written * * * there comes to the notice or knowledge of the employer * * * any act, fact, or information tending to indicate that the employé is * * * dishonest, * * * the employer shall immediately so notify the company in writing. * * *

"Upon the discovery by the employer that a loss has been sustained, * * * the employer shall immediately so notify the company in writing, * * * and shall within the time limited * * * make and furnish to the company in writing * * * claim for and proof of loss, if any sustained, *and failure to give such immediate notice or to make such claim or such proof within such time shall relieve the company from all liability hereunder on account of the employé.*"

The circumstances which have a bearing upon the condition recited are these: Lyon raised the stock certificates during the period from February, 1910, to March, 1911. Discovery thereof was not made until February, 1912, and written notice thereof was not given the Surety Company until April 24, 1912. In the early part of July, 1911, which was after Lyon's dishonest acts in raising stock certificates, but before discovery thereof, the Trust Company, through its treasurer and board of directors, discovered that Lyon had abstracted from its safe cash and securities belonging to the Trust Company amounting to $30,000. The loss occasioned by this dishonest act was partly repaired by Lyon giving and the Trust Company accepting certain mortgages. Notice of this dishonest conduct, however, was not given the Surety Company. Not until long after these acts of dishonesty were discovered and composed was Lyon's resignation as president of the Trust Company demanded, nor was his re-election as a director opposed, even after the discovery of the overissue of stock. An express condition upon which the bond was executed was that notice of dishonesty of whatsoever character should be given the Surety Company immediately upon its discovery. Of Lyon's dishonesty in taking cash and securities of the Trust Company, formal notice was never given the Surety Company, nor claim made for the loss thereby sustained. With full knowledge of his dishonesty, the Trust Company sought, and in complete ignorance thereof the Surety Company from time to time renewed, the bond for Lyon's fidelity. We are of opinion that the failure of the Trust Company to notify the Surety Company of Lyon's dishonesty in abstracting cash and securities of the Trust Company in July, 1911, and its failure to make claim therefor in the manner required and within the time limited, in order thereby to enable it to protect itself from loss by such means as it might employ, was a breach of one of the conditions upon which the bond was issued, and thereby relieved the Surety Company "from all liability," even for antecedent dishonesty of which notice was subsequently given, and therefore the District Court committed no error in directing a judgment of nonsuit and in refusing to take it off.

[4] The statute of the state of Pennsylvania of March 11, 1875 (P. L. 6, § 1), permits the entry of a judgment of compulsory nonsuit and provides a method for the review of the matters upon which such a judgment is directed. The plaintiff in error contends that the Dis-

trict Court was without power to enter a compulsory nonsuit in this case, and for authority cites Slocum v. New York Life Insurance Co., 228 U. S. 364, 33 Sup. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029. The Supreme Court did not decide in that case that a District Court was without power to direct a compulsory nonsuit in conformity with the statute of a state authorizing such a procedure, but the opinion contains dicta which give countenance to the contention that the entry of the compulsory nonsuit in this case was irregular. If irregularity exists, however, it extends only to form. The trial court had found that the plaintiff upon its own proofs was without right to recover. The question then was how to dispose of the case. Two ways were open to the court, which were equally effective and equally fair to the plaintiff; one having the sanction of immemorial usage and judicial approval, and the other being authorized by statute. The first was to direct a verdict for the defendant, and the second to direct a compulsory nonsuit under authority of a statute of the state of Pennsylvania. The latter method was pursued. If erroneous, the result will simply be a new trial, and a judgment entered upon a directed verdict, and a review upon another writ of error of the same questions now before the court. The difference in the procedures extends only to form. We are of opinion, therefore, that the case of Slocum v. New York Life Insurance Co., supra, is not decisive of the contention of the plaintiff in error that a District Court of the United States is without power to enter a compulsory nonsuit in conformity with a statute of the state in which the trial is held.

The judgment below is affirmed.