The act or acts committed by Weekes did not amount to larceny or embezzlement. The bond has been so drafted, skillfully and in the light of the decisions, as to cover only those acts which amount to one of the crimes named, as distinguished from the use of the term "larceny" and "embezzlement" in a broad sense, covering any fraudulent appropriation of the property of the employer, though it may not amount to a crime. (Guarantee Co.
v. Mechanics' Sav. Bank T. Co., 100 Fed. 559, 40 C.C.A. 542;Williams v. United States F. G. Co., 105 Md. 490,66 A. 495; Farmers State Bank v. Title Guaranty T. Co.,133 Mo. 705, 113 S.W. 1147; Granger v. Empire State Surety Co.,132 App. Div. 437, 116 N.Y. Supp. 973; Reed v. Fidelity G. Co., 189 Pa. St. 596, 42 A. 294; Dominion Trust Co. v. NationalSurety Co., 221 Fed. 618, 137 C.C.A. 342; Kansas State Mut.Hail Assn. v. Title Guaranty Co., 97 Kan. 271, 155 P. 13;Milwaukee Theatre Co. v. Fidelity C. Co., 92 Wis. 412,66 N.W. 360.) Even in those jurisdictions which give a broad meaning to the words "larceny" and "embezzlement," it has been held that an employee who becomes indebted to his employer by using funds of the employer for his personal use with no intent to defraud, is not guilty of embezzlement within the meaning of a fidelity bond. (Monongahela Coal Co. v. Fidelity D. Co., 94 Fed. 732, 36 C.C.A. 444; 175 U.S. 727, 44 L.Ed. 339,20 Sup. Ct. Rep. 1023; United States F. G. Co. v. Bank of Batesville,87 Ark. 348, 112 S.W. 957; United States F. G. Co. v.Overstreet, 27 Ky. Law Rep. 248, 84 S.W. 764; Williams v.United States F. G. Co., 105 Md. 490, 66 A. 495; DixieFire Ins. Co. v. Nelson, 128 Tenn. 70, 157 S.W. 416; Fidelity Deposit Co. v. Nordmarken, 32 N.D. 19, *Page 153 155 N.W. 669; Reed v. Fidelity C. Co., 189 Pa. St. 596, 42 A. 294; Milwaukee Theatre Co. v. Fidelity C. Co.,92 Wis. 412, 66 N.W. 360; Citizens' Guaranty State Bank v. NationalSurety Co. (Tex.Civ.App.), 242 S.W. 488.)
The bond and its renewal constituted separate and distinct contracts for the period covered by each. It is the contention of appellant that the original bond and the renewal thereof is not a continuing obligation, but on the contrary constitute separate and distinct contracts, the bond covering the period from June 14, 1923, at noon, to June 14, 1924, at noon, and the renewal covering the period of time beginning June 20, 1924, and ending June 20, 1925; and that while the renewal is a contract with the same terms and conditions as the bond in that the renewal certificate states that the bond is continued "subject to all covenants and conditions of the said Bond," each nevertheless stands as a separate and distinct contract, and accordingly the rights of the parties must be determined under each as such. For the larceny or embezzlement of the employee committed during the time covered by the bond no recovery could be had under the renewal contract, nor will the contract of renewal enable the assured to recover for a loss occurring under the bond not discovered until after six months following the termination of the bond but within the life of the renewal contract. (DeJernette v. Fidelity C. Co., 98 Ky. 558, 33 S.W. 828;United States F. G. Co. v. Williams, 96 Miss. 10, 49 So. 742; Proctor Coal Co. v. United States F. G. Co. (C.C.), 124 Fed. 424; Long Bros. Grocery Co. v. United States F. G.Co., 130 Mo. App. 421, 110 S.W. 29; Green v. United States F. G. Co., 135 Tenn. 117, 185 S.W. 726; Commercial Bank v.American Bonding Co., 194 Mo. App. 224, 187 S.W. 99; Frost on Guaranty Ins., 2d ed., sec. 40; 25 C.J. 1109.)
The defendant is not liable for any acts committed by Weekes during the period of the original bond and not discovered until after 12 o'clock noon of December 14, 1924. It is provided in the bond, in addition to the requirement that the acts must have been committed during the life of the *Page 154 
bond, that the same be "discovered within six months after the expiration or cancellation thereof," etc. Assuming, for the sake of argument, that the acts of Weekes amounted to larceny or embezzlement, and that certain of the same were committed during the life of the bond, viz., between June 14, 1923, and June 14, 1924, it follows that such acts, in order to be the subject of indemnity, must have been discovered during the six months' period ending on December 14, 1924. (Ladies of Modern Maccabees
v. Illinois Surety Co., 196 Mich. 27, 163 N.W. 7; Proctor CoalCo. v. United States F. G. Co., supra; United States F. G. Co. v. Williams, supra.) The requirement of discovery within a fixed period is binding even though discovery was prevented by a falsification of the employee's books, or by other means taken to conceal the fraud or dishonesty. (Fidelity Casualty Co. of New York v. Consolidated Nat. Bank, 71 Fed. 116, 17 C.C.A. 641; Larrabee v. Title Guaranty etc. Co., 250 Pa. St. 135, L.R.A. 1916F, 709, 95 A. 416.)
Requisite notice was not given by plaintiff to defendant. (Outlook F.E. Co. v. American Surety Co., 70 Mont. 8, 23,223 P. 905; Gamble-Robinson Co. v. Massachusetts Bonding Ins.Co., 113 Minn. 38, 129 N.W. 131, 133; Los Angeles AthleticClub v. United States F. G. Co., 41 Cal.App. 439,183 P. 174.) Respecting the matter of knowledge, the rule, moreover, is that knowledge of an officer or director is the knowledge of the corporation. (Kornhauser v. National Surety Co., 114 Ohio St. 24,150 N.E. 921; National Discount Co. v. United States F. G. Co., 47 Misc. Rep. 678, 94 N.Y. Supp. 457.)
May plaintiff take advantage of section 8145, Revised Codes of 1921, which reads: "Delay in the presentation to an insurer of notice or proof of loss is waived, if caused by any act of his, or if he omits to make objection promptly and specifically upon that ground." It is submitted that it may not, for to do so it must have pleaded the waiver. (Krause v. Insurance Co. ofNorth America, 73 Mont. 169, 235 P. 406; Oakland Motor CarCo. v. American Fidelity Co., 190 Mich. 74, 155 N.W. 729;National Const. Co. v. Travelers' Ins. Co., *Page 155 176 Mass. 121, 57 N.E. 350.) Generally, upon the subject of knowledge and notice in respect to a waiver by an insurer, see 26 C.J. 293 et seq.
The itemized claim of loss was not filed within the time provided in the bond. Such filing was required within three months after discovery, that is to say, within three months after becoming aware of any act or omission which might be made the basis of a claim. Conditions precedent of this character are valid and material. (Green v. United States Fidelity etc.Co., 135 Tenn. 117, 185 S.W. 726; Ritzville Warehouse Co. v.Dorgan, 128 Wn. 25, 221 P. 986.)
Plaintiff is precluded from recovery herein on the bond as originally issued, and as continued because of false and fraudulent statements in the application and certificate. It is immaterial whether the answers be termed warranties. It is sufficient to view them merely as representations. They pertain to matters highly material to the risk. (Krey Packing Co. v.United States F. G. Co., 189 Mo. App. 591, 175 S.W. 332;Issaquah Coal Co. v. United States F. G. Co., 126 Fed. 89, 90, 61 C.C.A. 145.) If an employer makes a false statement about a matter material to the risk in an application for fidelity insurance knowingly, or not knowing whether or not it is true, and without having used due diligence and precaution to learn the truth, and the answer is relied on and induces the execution of the bond, no recovery can be had upon it. (Fidelity DepositCo. v. Kane, 182 Ky. 648, 206 S.W. 888; United States F. G.Co. v. Blackly, Hurst Co., 117 Ky. 127, 77 S.W. 709; T.Wilce Co. v. Royal Indemnity Co., 289 Ill. 383, 124 N.E. 635;Bank of Hardineburgh Trust Co. v. American Bonding Co.,153 Ky. 579, 156 S.W. 394; Sunderland etc. Co. v. United States F. G. Co., 84 Neb. 791, 122 N.W. 25; National Surety Co. v.Globe Grain Milling Co., 256 Fed. 601, 4 A.L.R. 552, 167 C.C.A. 631; Glidden v. United States F. G. Co.,198 Mass. 109, 84 N.E. 143; United States F. G. Co. v. Bank ofBatesville, 87 Ark. 348, 112 S.W. 957; American Bonding TrustCo. v. Burke, 36 Colo. 49, 85 P. 692.) *Page 156 
It is not necessary, under policies such as here under consideration, that the employer should introduce such proof as would convict the employee of larceny or embezzlement as defined in the criminal law. (Green v. United States F. G. Co.,135 Tenn. 117, 185 S.W. 726; Goldman v. Fidelity Co.,125 Wis. 390, 104 N.W. 80; United American Fire Ins. Co. v. AmericanBonding Co., 146 Wis. 573, 40 L.R.A. (n.s.) 661, 131 N.W. 994;National Surety Co. v. Williams, 74 Fla. 446, 77 So. 212;Delaware State Bank v. Colton, 102 Kan. 365, 170 P. 992;American Bonding T. Co. v. Champion Ice etc. Co., 115 Ky. 863, 103 Am. St. Rep. 356, 75 S.W. 197; City Trust Co. v.Lee, 204 Ill. 69, 68 N.E. 485; Rankin v. United States F. G. Co., 86 Ohio St. 267, 99 N.E. 314; 25 C.J. 1094, 1095;Mitchell Grain etc. Co. v. Maryland Casualty Co.,108 Kan. 379, 16 A.L.R. 1488, 195 P. 978; Dubiske Co. v. AmericanSurety Co., 220 App. Div. 524, 221 N.Y. Supp. 619;Dexter-Horton Bank v. United States F. G. Co., 149 Wn. 343,270 P. 799; Parker Lbr. Co. v. Aetna Gas Co.,140 Wn. 262, 248 P. 795; Livingston v. Fidelity etc. Co., 27 Ohio C.C. 662.) The complaint alleges that while the policy and its continuation were in effect, Weekes did embezzle, take, steal and carry away moneys, securities and personal property belonging to plaintiff, and for which plaintiff was responsible, and convert the same to his own use. So far as concerns a matter of pleading the acts of larceny and embezzlement may be set out in general terms. (United States F. G. Co. v. Newton,50 Colo. 379, 115 P. 897; Canton Nat. Bank v. American B. Tr. Co.,111 Md. 41, 18 Ann. Cas. 820, 73 A. 684; Oklahoma Sash D.Co. v. American Bonding Co. (Okla.), 153 P. 1151.)
The weight of authority and the unanimous current of recent cases favors the broad construction of the contract. The taking was a fraudulent appropriation and that is a sufficient larceny or embezzlement under the authorities supra. *Page 157 
It is claimed by appellant that certain audits were made during the various years and that such audits disclosed the fact that stock had been sold for notes. The audits which were presented to the board disclosed no such facts, and none of the officers or directors was aware of it. Moreover there is no intimation that any director or officer knew that Weekes was drawing commissions upon such sales, and it is his act in so doing that is the meat of the present controversy. It is trite argument to say that knowledge of an officer or agent is knowledge of the corporation and that directors are chargeable with notice of what the corporate books disclose. But there is no intimation here that any officer or director could have discovered anything from the books. Weekes had manipulated the books in such a manner that for a long period not even a paid auditor discovered anything amiss. This plea of implied knowledge and notice has been heretofore presented to courts by surety companies seeking to escape liability and such pleas have invariably received short shrift. If corporation officers are to be held to such strict interpretation why should insurance be carried at all? (UnitedStates F. G. Co. v. First Nat. Bank, 233 Ill. 475,84 N.E. 670; Guarantee Co. of North Amer. v. Mechanics' Sav. Bank T.Co., 80 Fed. 766, 26 C.C.A. 146.)
It seems to be quite generally held that the bond and continuation certificate is one continuous contract under which the defendant is liable for any defalcation occurring during the term of the bond and its renewals up to the limit of the liability set forth in the bond. (American Bonding Co. v.Morrow, 80 Ark. 49, 117 Am. St. Rep. 72, 96 S.W. 613; JohnChurch Co. v. Aetna Indemnity Co., 13 Ga. App. 826,80 S.E. 1093; Fidelity Deposit Co. v. Champion etc. Storage Co.,133 Ky. 74, 117 S.W. 393; Pearson v. United States F. G.Co., 138 Minn. 240, 164 N.W. 919; Rankin v. United States F. G. Co., 86 Ohio St. 267, 99 N.E. 314; Southern Surety Co. v.Oil Field Equitable Surety Co., 84 Okla. 23, 202 P. 295;Bank v. United States F. G. Co., 110 Tenn. 10, 100 Am. St. Rep. 765, 75 S.W. 1076; State v. New Amsterdam *Page 158 Co., 110 Okla. 23, 42 A.L.R. 829, 236 P. 603; Green v.United States F. G. Co., 135 Tenn. 117, 185 S.W. 726; UnitedStates F. G. Co. v. Bank, 147 Ky. 285, 143 S.W. 997; UnitedStates F. G. Co. v. Shepherd's Home Lodge No. 2, 163 Ky. 706,174 S.W. 487; Chatham etc. Imp. Co. v. United States F. G. Co., 18 Ga. App. 588, 90 S.E. 88.)
As to the requisite notice not having been given by plaintiff to defendant: An insured is not bound to report his suspicions of the dishonesty or other misconduct of the employee to the insurer. (25 C.J. 1102; American Surety Co. v. Pauly,170 U.S. 133, 42 L.Ed. 977, 18 Sup. Ct. Rep. 552; National SuretyCo. v. Western P. R. Co., 200 Fed. 675, 119 C.C.A. 91;Perpetual Bldg. etc. Assn. v. United States F. G. Co.,118 Iowa, 729, 92 N.W. 686; Fidelity G. Co. v. Western Bank, 29 Ky. Law Rep. 639, 94 S.W. 3.) Where the notice required is one which would charge the employee with the commission of a felony, the employer is not bound to give notice until he had acquired knowledge sufficient to justify a reasonable man in making such a charge. (25 C.J. 1102; Aetna Indem. Co. v. Farmer's Nat.Bank, 169 Fed. 737, 95 C.C.A. 169; Outlook F. Elevator Co. v.American Surety Co., 70 Mont. 8, 223 P. 905.)
Recovery of a portion of the money embezzled is not a settlement. (25 C.J. 1099; Perpetual Bldg. etc. Assn. v.United States F. G. Co., supra; Remington v. Fidelity Deposit Co., 27 Wn. 429, 67 P. 989; Champion Ice Mfg. etc.Co. v. American Bonding etc. Co., 115 Ky. 863, 103 Am. St. Rep. 356, 75 S.W. 197.) Neither did the taking of the note constitute a settlement or condonation. (Murray City v.Banks, 62 Utah, 296, 219 P. 246; Standard Electric Time Co.
v. Fidelity Deposit Co., 191 N.C. 653, 132 S.E. 808; Bank ofWaterproof v. Fidelity Deposit Co., 297 Fed. 217; Jarvis
v. Fry, 46 Cal.App. 704, 189 P. 795; United States F. G.Co. v. Eichel, 219 Fed. 803, 135 C.C.A. 473; Sampson Co. v.Commonwealth, 202 Mass. 326, 88 N.E. 911.)
False and fraudulent statements in the application and certificate: Defendant was required to specify the warranty *Page 159 
or condition claimed to have been violated, and allege the facts constituting a breach. (25 C.J. 500; Goldman v. Fidelity Deposit Co., 125 Wis. 390, 104 N.W. 80; May v. Buckeye Mut.Ins. Co., 25 Wis. 291, 3 Am. Rep. 76; Chambers v.Northwestern Mut. Life Ins. Co., 64 Minn. 495, 58 Am. St. Rep. 549, 67 N.W. 367; Bank of Tarboro v. Fidelity etc. Co.,128 N.C. 366, 83 Am. St. Rep. 682, 38 S.E. 908.)
A misrepresentation to avail as a defense against a fidelity policy or bond must be material. (25 C.J. 1105.) The application is nowhere referred to in the policy as being a part of the policy, as required by section 8123, Revised Codes of 1921. This statutory provision applies with full force and effect to the policy here under consideration. (25 C.J. 1108, note, 29;Eastern R.R. Co. v. Relief Fire Ins. Co., 98 Mass. 420;Conner v. Manchester Assur. Co., 130 Fed. 743, 70 L.R.A. 106, 65 C.C.A. 127.) Referring to representation: "7. Explain fully his duties in connection therewith. Usual to Secretary and Treasurer." The mere fact that Weekes had other duties not covered by the bond is immaterial and will not discharge the appellant. (Alabama Fidelity etc. Co. v. Alabama P. Sav.Bank, 200 Ala. 337, 76 So. 103; Bank of England v.Maryland Casualty Co., 293 Fed. 783; Savings Loan Assn. v.United States F. G. Co., 197 Pa. St. 177, 46 A. 910.)
The renewal certificate purports to certify the following matters: 1. The Weekes' books and accounts have been examined from time to time and were found correct. 2. All moneys and property in his control or custody have been accounted for. 3. Proper securities and funds are on hand to balance his accounts. 4. He is not now in default. 5. He has performed his duties in an acceptable manner. 6. Respondent knows of no reason why the bond should not be continued. These statements were merely representations of facts and not warranties of the truth of the matters set forth in the certificate. (Remington v. Fidelity Deposit Co., 27 Wn. 429, 67 P. 989; Title Guaranty Co. v.Nichols, 224 U.S. 346, 56 L.Ed. 795, 32 Sup. Ct. Rep. 475;Hunter v. *Page 160 United States F. G. Co., 129 Tenn. 572, 167 S.W. 692.) Respondent by the certificate did not warrant that Weekes' accounts were correct, or that all the moneys and property in his control were accounted for, or that he had proper securities and funds on hand to balance his accounts, or that he was not in default. It simply stated that examinations made by the auditor showed such to be the fact. (Guarantee Co. v. Mechanic's Sav.Bank T. Co., 80 Fed. 766, 26 C.C.A. 146; United States F. G. Co. v. First Nat. Bank, 233 Ill. 475, 84 N.E. 670.)
Samuel M. Weekes was employed by plaintiff as its secretary and treasurer. Defendant, by its bond duly executed and delivered, on June 12, 1923, undertook to reimburse plaintiff "for such pecuniary loss as the employer [plaintiff] shall sustain of money, * * * belonging to the employer for which the employer is responsible, amounting to any act or acts of larceny or embezzlement on the part of the employee," etc. The bond was effective for one year. On June 10, 1924, in consideration of an additional premium, it was renewed and extended until June 20, 1925.
This action was brought to recover on the bond for loss sustained by plaintiff through the acts of the employee, Weekes, named in the bond. By stipulation of counsel a trial by jury was waived and the cause referred to Loy J. Molumby, as referee, to hear the evidence and report to the court his findings of fact. The referee made and filed findings of fact in favor of plaintiff; judgment was entered thereon, and defendant appeals.
It appears from the pleadings and the evidence that for several years prior to June 12, 1923, Weekes was employed by plaintiff, first as secretary, and later as secretary and treasurer. In his capacity as such officer he had general supervision of its business, collected money due it, and disbursed moneys due others from it, and had general supervision and control of the books and accounts of the company. On June *Page 161 
9, 1921, plaintiff made and entered into a contract with Weekes, under the terms of which the latter was engaged to sell all unsold treasury stock of plaintiff. It was provided: "The said stock shall be sold at the rate of one hundred twenty-five dollars per share, and party of the second part [Weekes] shall be entitled to a commission on the sale of such stock, on the basis of 20% of the par value of such stock, payment to be made only when the cash for any such sales has been actually paid in. The commission to be paid only on the amount of cash paid into the treasury from each single transaction." This agreement remained in force during the period covered by the bond and its extension.
Between June 10, 1923, and March 3, 1925, Weekes sold a large amount of capital stock of plaintiff, taking the purchasers' notes. Entries of such sales were made in the books, and against each sale entries were made showing him entitled to commissions. Weekes then withdrew, on checks of plaintiff, the moneys shown by the books to be due as commissions, and converted the same to his own use. The total amount so taken and converted exceeded the sum of $29,000. The evidence tends to show that the sales were fictitious and the notes forgeries. The officers and directors of plaintiff corporation had no knowledge or information that Weekes was charging and collecting commissions on such sales until shortly before his discharge in April, 1925.
It is contended by defendant that the act or acts of Weekes did not amount to larceny or embezzlement.
"The universal rule is that in construing the bond of a surety[1] company, acting for compensation, the contract is construed most strongly against the surety, and in favor of the indemnity which the obligee has reasonable grounds to expect. Such contracts are generally regarded as contracts of insurance, and are construed most strictly against the surety. (Note to the case of Royal Indemnity Co. v. Northern Granite S. Co., 12 A.L.R. 382; 21 R.C.L., p. 1160.)" (State v. American SuretyCo., 78 Mont. 504, 255 P. 1063.) And it *Page 162 
is not necessary, in order for plaintiff to recover on the bond, that it introduce such proof as would convict Weekes of the crime of larceny or embezzlement, as defined in the criminal law. (Green v. United States F. G. Co., 135 Tenn. 117,185 S.W. 726; Goldman v. Fidelity Deposit Co., 125 Wis. 390,104 N.W. 80; National Surety Co. v. Williams, 74 Fla. 446,77 So. 212; Delaware State Bank v. Colton, 102 Kan. 365,170 P. 992; City Trust Co. v. Lee, 204 Ill. 69, 68 N.E. 485; 25 C.J. 1094; 6 Cooley's Briefs on Insurance, 5654.) The parties were not contracting on the basis of an enforcement of the criminal laws; if only indemnity for losses suffered by reason of technical larceny or embezzlement had been intended, that purpose could have been expressed clearly and in no uncertain terms. (Delaware State Bank v. Colton, supra; Dubiske Co. v.American Surety Co., 220 App. Div. 524, 221 N.Y. Supp. 619;Dexter-Horton Bank v. United States F. G. Co., 149 Wn. 343,270 P. 799.)
Section 11368, Revised Codes 1921, provides: "Every person[2] who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person either — 1. Takes from the possession of the true owner, or of any other person; or obtains from such possession by color or aid of fraudulent or false representation or pretense, or of any false token or writing, or secretes, withholds, or appropriates to his own use, or that of any other person other than the true owner, any money, * * * or, 2. * * * is guilty of larceny." The scheme devised and used by Weekes was clearly fraudulent, and by means thereof he obtained from plaintiff its money, and appropriated the same to his own use. Under the terms of the bond, defendant undertook to reimburse plaintiff for any pecuniary loss which it might sustain by reason of acts of Weekes, in connection with the duties and obligations of his position, amounting to larceny or embezzlement. In fraudulently obtaining plaintiff's money and appropriating the same to his own use, he violated his duty to plaintiff, which amounted to "larceny or embezzlement" *Page 163 
within the meaning of section 11368, supra, and his act or acts constituted a manifest breach of defendant's bond.
But it argued that the books of account disclosed the[3] transactions; that the officers of plaintiff were chargeable with knowledge of the contents of the books of the company; and that the officers and directors will be deemed to have acquiesced in, and approved, the conduct of Weekes. There is not any evidence to justify such a conclusion. While it is true the books of account did show the various transactions, it is also true that Weekes had manipulated the accounts in such a manner that for a long period of time even a certified public accountant was not able to discover the shortage, and the officers testified that they would not have been able to discover the true condition by an examination of the books, and that they had no knowledge of the conditions.
It is next contended that the bond and its renewal constituted separate and distinct contracts for the period covered by each. This question is not necessary to be passed upon. The uncontradicted evidence shows that, during the period covered by each of the instruments, Weekes misappropriated amounts in excess of the penal sum named in the bond.
Counsel for defendant contend that the requisite notice was[4, 5] not given by plaintiff to defendant, and the itemized claim of loss was not filed within the time provided in the bond.
The bond provides that the employer shall at the earliest practicable moment, and not more than five days after becoming aware of any act or omission which may become the basis of a claim, notify the home office, and within three months after such discovery file with the home office an itemized statement of the claim sworn to by the employer. Such a condition in a bond is a condition precedent, and failure to comply therewith will bar recovery under the bond, unless the condition has been waived by the company. (La Bonte v. Mutual Fire Ins. Co., 75 Mont. 1,241 P. 631; Careve v. Phoenix Ins. Co., 67 Mont. 236,215 P. 235; Tuttle v. Pacific Mut. Life Ins. Co., 58 Mont. 121, 16 A.L.R. 601, 190 P. 993.) That *Page 164 
the insurer may waive this condition is settled beyond question in this jurisdiction. (La Bonte v. Mutual Fire Ins. Co., supra.) Counsel concede this to be the rule in this state, but insist that plaintiff failed to plead waiver. With this we cannot agree.
Section 8145, Revised Codes of 1921, provides: "Delay in the presentation to an insurer of notice or proof of loss is waived, * * * if he omits to make objection promptly and specifically upon that ground." The complaint alleges that plaintiff notified defendant within five days after discovering Weekes' defalcations, and within three months thereafter filed an itemized statement of claim and proof of loss, sworn to by plaintiff, and "that said defendant has at no time made objection to said claim or the sufficiency thereof, nor demanded further proof, and has at all times, since on or about the said 3rd day of July, 1925, retained said claim without objection or exception thereto." We think these allegations are sufficient. (Miglier
v. Phoenix Ins. Co., 102 Misc. Rep. 461, 169 N.Y. Supp. 45;Glazer v. Home Ins. Co., 190 N.Y. 6, 82 N.E. 727; Bank v.Home Ins. Co., 14 Cal.App. 208, 111 P. 507.) It has been held that a delay in furnishing proofs as well as any other defect may be waived by the failure of the insurer to object. (Ames v. Minneapolis Fire Marine Ins. Co., 69 Mont. 177,220 P. 747; Ramsey v. General Accident Ins. Co.,160 Mo. App. 236, 142 S.W. 763; St. Paul Fire Marine Ins. Co. v.Griffin, 33 Okla. 178, 124 P. 300; Breeden v. Aetna LifeIns. Co., 23 S.D. 417, 122 N.W. 348; 7 Cooley's Briefs on Insurance, 6052, and cases cited.)
Upon the trial the proof disclosed that on April 28, 1925, plaintiff wrote defendant as follows: "* * * We are not able to say as to whether or not there is any act or omission on his [Weekes'] part which may be made the basis of a claim against your company under this bond. * * * We shall, however, advise you as quickly as we are in a position to give you a definite notice or statement and our purpose at this time is merely to advise you as to the possibility of a demand *Page 165 
in the event that further investigation should disclose shortage or other liability on the part of Mr. Weekes." Shortly thereafter D.A. Crichton, state agent for defendant, and Mr. Kotz, its attorney, called at plaintiff's office, and requested permission to examine the books; the privilege was accorded Mr. Kotz. On June 5 two letters were written defendant relative to the matter and its liability under the bond; in reply to these letters, defendant stated that Crichton had been requested to investigate. On July 3 proof of loss and itemized statement were forwarded to the home office of defendant. This action was filed October 10, 1925.
We think it clear from the evidence that, after the receipt of plaintiff's proof of loss, defendant was fully advised of all the circumstances surrounding the loss. At no time, either by answer or otherwise, did defendant object upon the ground that notice had not been given or that the itemized claim had not been filed within the time required by the terms of the bond. Defendant did not defend upon this ground, but upon the theory that the act of Weekes did not amount to larceny or embezzlement. We are of the opinion that the objection now made comes too late, and that the evidence is sufficient to prove waiver.
It is next contended that plaintiff settled with Weekes for[6, 7] the purported loss without the written consent of defendant, thereby releasing it from liability under the bond.
The bond contains this provision: "Nor shall * * * any settlement for loss hereunder be made without the written consent of the surety." When Weekes' acts became known to the officers and directors of plaintiff he deeded to it a residence and summer home; both properties were heavily encumbered; the sum of $500 was realized from these places; $250 of this amount was applied upon an indebtedness owing by Weekes to plaintiff on the purchase price of an automobile, and the balance credited upon his shortage. It is clear that this property was not accepted as a payment or satisfaction of Weekes' liability to plaintiff. Plaintiff did not agree to release him or *Page 166 
condone his offense. What was done did not have the effect of depriving the defendant of any right of subrogation upon paying the amount of the bond. The quoted provision had the effect of forbidding plaintiff, without the written consent of defendant, to enter into any transaction with Weekes having the effect of a settlement, involving a release or discharge with the result of impairing the right of defendant to proceed against him and enforce the liability which he had incurred. The result of what was done was a mere payment on the shortage, and was not a settlement within the meaning of the bond. (Remington v.Fidelity Deposit Co., 27 Wn. 429, 67 P. 989; PerpetualBuilding Loan Assn. v. United States F. G. Co.,118 Iowa, 729, 92 N.W. 686; Prosser Power Co. v. United States F. G.Co., 73 Wn. 304, 132 P. 48; Bank of Waterproof v.Fidelity Deposit Co. (C.C.), 297 Fed. 217; 21 R.C.L. 1000.)
Weekes also executed his note payable to plaintiff, and delivered the same to its secretary, for the sum of $29,691.17, in acknowledgment of his defalcation to that extent. No part of the note has been paid. The rule applicable is that, in the absence of an agreement, express or implied, between the parties, that it is to be received as payment, a note of a debtor, given for his precedent debt, is not payment of the original demand. (30 Cyc. 1194; 20 Cal. Jur. 920; A. Leschen Sons Rope Co. v.Mayflower Gold M. Co., 173 Fed. 855, 35 L.R.A. (n.s.) 1, 97 C.C.A. 465; Murray City v. Banks, 62 Utah, 296, 219 P. 246;Prosser Power Co. v. United States F. G. Co., supra;Standard Electric Time Co. v. Fidelity Deposit Co.,191 N.C. 653, 132 S.E. 808; United States F. G. Co. v. Eichel, 219 Fed. 803.) The evidence shows that the note was taken merely as an acknowledgment of the amount of Weekes' shortage, and not as payment.
It is next contended that plaintiff is precluded from recovery[8-11] because of false and fraudulent statements contained in the "Employer's Statements" furnished by it before the execution and delivery of the bond. *Page 167 
On June 20, 1921, Weekes, as secretary of plaintiff company, procured from defendant a bond for $5,000, similar in its provisions to the bond before us. Before its execution and delivery, defendant required plaintiff to furnish, upon blanks prepared by defendant, an "Employer's Statement," which contained this provision: "And shall constitute the basis, and form a part of said bond applied for, and any other bond that may be executed by the Federal Surety Company to the undersigned upon the applicant in said position or any similar position, or any renewal or continuation of such bond or bonds." Like statements were required to be furnished by plaintiff upon the renewal or extension of that bond, and before the delivery of the bond and renewal in suit. No reference is made in the bond to the application or to the "Employer's Statements" furnished by plaintiff, and they are not expressly made a part of it. Counsel for defendant insist that the statements made by plaintiff are warranties and conditions precedent, and must be literally fulfilled to entitle plaintiff to recover.
Section 8123, Revised Codes of 1921, reads: "Every express warranty, made at or before the execution of the policy, must be contained in the policy itself, or in another instrument signed by the insured and referred to in the policy, as making a part of it." The provisions of this statute are applicable to the bond under consideration. (25 C.J. 1108, and cases cited.) Manifestly, under this section, the representations contained in the "Employer's Statements," not being referred to or made a part of the bond, were not warranties. "The general rule is that a warranty must be a part and parcel of the contract — made so by express agreement of the parties upon the face of the policy, * * *" while "a representation is not, strictly speaking, a part of the contract of insurance, or of the essence of it, but rather something collateral or preliminary, and in the nature of an inducement to it." (Pelican v. Mutual Life Ins. Co., 44 Mont. 277,119 P. 778; Alabama Gold Life Ins. Co. v. Johnston,80 Ala. 467, 59 Am. Rep. 816, 2 So. 125; *Page 168 
14 Cal. Jur. 489.) Clearly, the statements made by plaintiff in the "Employer's Statements" furnished defendant were representations and not warranties.
But counsel argue that the provision of the bond that "all representations made by the employer to surety, relative to the employee in connection with this bond or any continuation thereof, are represented by the employer to be true," brings defendant within the provisions of section 8123. We think not. A general reference to the statements and representations as a whole will not incorporate them into the bond so as to make them warranties. The reference must be specific. (3 Cooley's Briefs on Insurance, 1875; 2 Id. 1071; 3 Joyce on Insurance, sec. 1891.)
The distinction between warranties and representations arises from the different effect given to the statements. "A warranty is the statement of a fact on the literal truth of which the validity of the contract depends; but in the case of a representation the validity of the policy does not depend on the literal truth of the assertion. In other words, a warranty must be literally true, while a representation need be only substantially true." (3 Cooley's Briefs on Insurance, 1866;Pelican v. Mutual Life Ins. Co., supra; 3 Joyce on Insurance, sec. 1924.)
It is a well-established rule that, to avoid a policy on the ground that there has been a misrepresentation, the statement must not only be untrue as of the time when it was made, but also material as regards the acceptance of the risk assumed by the insurer. (4 Cooley's Briefs on Insurance, 3039, and cases cited.) And the rule seems equally well settled that, to avoid a policy for misrepresentations, the false statements must have been made wilfully and with intent to deceive, and must have been relied upon by the insurer. (Pelican v. Mutual Life Ins. Co., supra; 4 Cooley's Briefs on Insurance, 3048, and cases cited.)
We need not express an opinion as to whether or not the representations made by plaintiff prior to the "Employer's *Page 169 
Statement" of June 13, 1923, were false as to material facts, since it does not appear that any of the representations made were relied upon by defendant when it executed and delivered the bond under consideration or the renewal thereof. Defendant's agent, who countersigned the bond on behalf of defendant and the renewal certificate, testified that the bond was executed upon the representations contained in the statement of June 13, 1923. As to this statement but few of the printed questions were[12] answered by plaintiff. In executing the bond without further inquiry, defendant waived the want of answer to the printed questions, and thus rendered the omission to answer immaterial. (Phoenix Mut. Life Ins. Co. v. Raddin,120 U.S. 183, 30 L.Ed. 644, 7 Sup. Ct. Rep. 500.) The agent further testified that the renewal certificate was executed upon the representations made by plaintiff on June 10, 1924. From a careful examination of the entire record, we think the representations contained in these statements were made in good faith and were substantially true. Defendant's contention cannot be sustained.
Complaint is made that the referee heard incompetent evidence.[13] Where an action at law is tried by the court sitting without a jury, the admission of incompetent evidence will not bring about a reversal; the presumption is that the court in making its order considered only the competent evidence before it. (Atkinson v. Roosevelt County, 71 Mont. 165,227 P. 811; State ex rel. Rankin v. Martin, 68 Mont. 392,219 P. 632; State v. Driscoll, 49 Mont. 558, 144 P. 153.) There is ample competent evidence to support the referee's findings and the judgment rendered thereon, and we think it apparent that defendant was not prejudiced by the erroneous admission of any testimony.
Counsel predicate error upon the referee's finding that Weekes' embezzlements continued until April 12, 1925, and insist that plaintiff had knowledge of his acts on March 3. The bond provides: "The obligation of this bond shall terminate: (a) Upon discovery of loss hereunder." We think *Page 170 
the question is of no importance, since the evidence discloses that the last act of larceny was committed by Weekes on January 31, 1925. The finding, if erroneous, was not prejudicial.
Finding no reversible error, the judgment is affirmed.
MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS, GALEN and ANGSTMAN concur.